IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Laura L. Divane and April Hughes, | CASE NO. 16-CV-8157 |
| Plaintiffs, | JUDGE JORGE L. ALONSO |
| vs. | |
| Northwestern University, Northwestern University Retirement Investment Committee, Pamela S. Beemer, Ronald R. Braeutigam, Kathleen Hagerty, Craig A. Johnson, Candy Lee, William H. McLean, and Ingrid S. Stafford, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................1

ARGUMENT ..................................................................................................................4

I.      The Complaint Fails To Satisfy The Pleading Requirements Of Rule 8. ..........................4

II.     The Complaint Fails To State A Claim ............................................................................7

      A.  Plaintiffs Fail To Plead Facts To Support A Claim Based On Allegedly
           Excessive Investment Management Fees (Count II). ...................................................8

          1.  Plaintiffs' Allegations That The Plans Offer Too Many Investment
               Options Are Insufficient. ......................................................................................8

          2.  Plaintiffs' Additional Allegations Also Are Insufficient. ...................................10

      B.  Plaintiffs Fail To Plead Facts To Support Any Claim Based On Allegedly
           Excessive Recordkeeping Fees (Count I). ................................................................12

      C.  Plaintiffs' Complaint Allegations Establish That ERISA's Safe Harbor
           Provision Bars Their Claims (Counts I–III) .............................................................16

III.    Plaintiffs Lack Standing And A Statutory Right To Sue. ..............................................17

IV.    Plaintiffs' Claims Are Time Barred. ...............................................................................18

V.     Plaintiffs' Claims As To The NURIC Defendants Arising Before 2012 Fail. .................20

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**SUPREME COURT CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 7

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ............................................................................................. 4

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981) ................................................................................................ 17

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ................................................................................................ 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 18

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) .............................................. 17

**SEVENTH CIRCUIT CASES**

*Brock v. Robbins*,
  830 F.2d 640 (7th Cir. 1987) .................................................................................. 13

*Brosted v. Unum Life Ins. Co. of Am.*,
  421 F.3d 459 (7th Cir. 2005) .................................................................................... 5

*George v. Kraft Foods Global, Inc.* .......................................................................... 13

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) .......................................................................... passim

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) .................................................................................. 11

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) .......................................................................... passim

*Martin v. Consultants & Adm'rs, Inc.*,
  966 F.2d 1078 (7th Cir. 1992) ................................................................................ 19

iii

*Meyers v. Oneida Tribe of Indians of Wis.*,
   No. 15-3127, 2016 WL 4698949 (7th Cir. Sept. 8, 2016) .....................................................18

*Rush v. Martin Petersen Co.*,
   83 F.3d 894 (7th Cir. 1996) ......................................................................................................19

*Stanard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ................................................................................................4, 5


OTHER CIRCUIT AUTHORITIES

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016).....................................................................................................18

*Brown v. Owens Corning Inv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010) ...................................................................................................19

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1 (1st Cir. 2009).............................................................................................................5

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011).....................................................................................................8, 9

*Taveras v. UBS AG*,
   612 F. App'x 27 (2d Cir. 2015) ................................................................................................17

*Tibble v. Edison Int'l*,
   729 F.3d 1110 (9th Cir. 2013) ....................................................................................................9

*Young v. GM Inv. Mgmt. Corp.*,
   325 Fed. Appx. 31 (2d Cir. 2009) ............................................................................................12


DISTRICT COURT CASES

*Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*,
   No. 11-cv-5127, 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012), *aff'd*, 513 F.
   App'x 78 (2d Cir. 2013).....................................................................................................11, 12

*Loomis v. Exelon Corp.*,
   No. 06-cv-4900, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009), *aff'd*, 658 F.3d
   667 (7th Cir. 2011).....................................................................................................12, 13, 16

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010).....................................20

*White v. Chevron Corp.*,
No. 16-cv-793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .......................................6, 9, 13

*Young v. GM Inv. Mgmt. Corp.*,
550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009).......................19

STATUTES

26 U.S.C. § 403 ...........................................................................................................................2

29 U.S.C. § 1104(c) ..................................................................................................................16

29 U.S.C. § 1109 .......................................................................................................................20

29 U.S.C. § 1113 .......................................................................................................................18

29 U.S.C. § 1132 .......................................................................................................................18

Internal Revenue Code § 403(b) .............................................................................................1, 2

OTHER AUTHORITIES

29 C.F.R. § 2520 .......................................................................................................................20

29 C.F.R. § 2550.404 .....................................................................................................16, 17, 19

Advisory Council on Employee Welfare and Pension Benefit Plans, Report to the
Honorable Hilda L. Solis, U.S. Secretary of Labor, *Current Challenges and
Best Practices for ERISA Compliance for 403(b) Plan Sponsors*, 8 (Nov.
2011). .................................................................................................................................2

Annual Reporting and Disclosure, 72 Fed. Reg. 64, 710 (Nov. 16, 2007)....................................19

U.S. Department of Labor, Fact Sheet on Final Regulation Relating to Service
Provider Disclosures Under Section 408(b)(2), Feb. 2012........................................................19

Employee Benefits Sec. Admin., U.S. Department of Labor, Field Assistance
Bulletin, No. 2009-02 (July 20, 2009) ........................................................................................3

Plaintiffs' complaint should be dismissed because it is doomed by well-settled Seventh Circuit precedent. Plaintiffs assert claims under ERISA for fiduciary breaches relating to Northwestern University's defined contribution retirement plans, which are governed by § 403(b) of the Internal Revenue Code. They claim that defendants breached their fiduciary duties by failing to minimize the fees charged for investment management and recordkeeping services, principally because the plans allegedly offered too many investment options and required two recordkeepers to service them. But the Seventh Circuit has already rejected this theory in the context of corporate 401(k) plans because ERISA does not require fiduciaries to restrict participant choice in order to obtain the lowest possible fee structure.

Plaintiffs' theory is even weaker in the context of Northwestern's plans, because 403(b) plan fiduciaries like defendants have fewer options for providing plan participants with a range of investment choices than do their 401(k) peers. Instead of identifying any facts that support an inference that defendants breached their fiduciary duties, plaintiffs offer conclusory allegations and attack the plans' fiduciaries for plan design features that are endemic to not-for-profit sector plans. To support their editorial position, plaintiffs cite a compendium of articles, which make clear that the root of plaintiffs' complaint is the statutory and regulatory schemes that govern these plans, not fiduciary decisions.[1] Federal court litigation is not the proper vehicle for plaintiffs to advocate for a complete legislative overhaul of 403(b) plans, and accordingly, the Court should reject plaintiffs' claims.

## BACKGROUND

Plaintiffs, Laura L. Divane and April Hughes, are participants in the Northwestern University Retirement Plan (the "Retirement Plan"). In their complaint, plaintiffs assert claims

---

[1] Plaintiffs' counsel has filed twelve similar lawsuits against university retirement plans. Anne Tergesen, *Suits Target University Retirement Plans*, Wall St. J., Aug. 19, 2016 (attached as Ex. H).

for breach of fiduciary duty under ERISA on behalf of themselves, participants in the Retirement Plan, and participants in another Northwestern plan, the Northwestern University Voluntary Savings Plan (the "Voluntary Plan," and collectively, the "Plans"), in which they do not participate. The Plans are individual account defined contribution plans.[2] Northwestern University is the named fiduciary and plan administrator for the Plans. Compl. ¶ 19.[3] Defendants are Northwestern University, the Northwestern University Retirement Investment Committee ("NURIC"), and six individuals who are members of NURIC. After creating NURIC in 2012, Northwestern delegated to it fiduciary responsibility over the administration and investment of the Plans' assets. *See id.* ¶ 21.

Section 403(b) plans were established for certain tax exempt organizations in accordance with section 501(c)(3) of the Internal Revenue Code.[4] They were designed especially for not-for-profit organizations, and were intended to keep "costs and responsibilities [of the institution] . . . minimal" to make them "affordable for not-for-profit organizations." *Id*. at 8. Section 403(b) plans may offer as investment options ***only*** annuity contracts or mutual funds held in custodial accounts. 26 U.S.C. §§ 403(a)(1), (b)(7).[5] Thus, "many 403(b) plans have consisted solely of participant-owned annuity contracts and/or custodial accounts," wherein "plan participants possessed many (and sometimes all) of the contractual rights associated with these accounts or contracts." Advisory Council Report at 5. Prior to 2009, when new IRS regulations

---

[2] The Retirement Plan is funded by a combination of contributions from Northwestern and Plan participants. Northwestern University Retirement Plan document, effective January 1, 2015, at §§ 4.1–4.3 (attached as Ex. A). The Voluntary Plan is funded exclusively by participant contributions. Northwestern University Voluntary Savings Plan document, effective January 1, 2015, at § 4.1 (attached as Ex. B).

[3] For purposes of this motion only, defendants treat plaintiffs' well-pleaded factual allegations as true.

[4] *See* Advisory Council on Employee Welfare and Pension Benefit Plans Report to the Honorable Hilda L. Solis, U.S. Secretary of Labor, *Current Challenges and Best Practices for ERISA Compliance for 403(b) Plan Sponsors*, at 5 (Nov. 2011) ("Advisory Council Report") (attached as Ex. I).

[5] These complex regulations are explained in the Advisory Council Report at 8.

became effective, 403(b) plans gave participants significant individual autonomy in selecting investments and operated much like individual retirement accounts. *See* Employee Benefits Sec. Admin., U.S. Department of Labor, Field Assistance Bulletin, No. 2009-02 (July 20, 2009) (attached as Ex. J). The 2009 IRS regulations implemented a sea change, requiring employers to exercise more control over the administration of these plans. *Id.*

Like many 403(b) plans, the Plans have provided participants a wide range of investment options, not by offering the array of types of investment vehicles available in 401(k) plans, but by offering many options in the two categories permitted in 403(b) plans. Until October of this year, participants in the Retirement Plan could choose from among 242 such options offered through TIAA-CREF and Fidelity. Compl. ¶ 28. Participants in the Voluntary Plan could choose from among 187 options, also offered through TIAA-CREF and Fidelity. *Id.* ¶ 30. Under a new design rolled out during 2016, the Plans' investment options now consist of 32 options available through TIAA-CREF and Fidelity, and a brokerage window offering participants access to investments outside of the Plans' core options. *Id.* ¶¶ 41–46, 122–33; *see* Ex. F (listing the current investment options). Investment management, recordkeeping, and other fees are assessed based on the particular investment options each participant chooses. *See, e.g.*, *id.* ¶¶ 35–36.

In their complaint, plaintiffs assert three counts alleging breaches of fiduciary duty. In Count I, plaintiffs allege breaches of the duties of loyalty and prudence through payment of allegedly excessive recordkeeping fees. *Id.* ¶¶ 144–50. In Count II, plaintiffs allege breaches of the same duties through payment of unreasonable investment management fees and performance losses. *Id.* ¶¶ 151–62. In Count III, plaintiffs allege defendants breached their duty to monitor other (unidentified) fiduciaries. *Id.* ¶¶ 163–68.

3

## ARGUMENT

The complaint should be dismissed because plaintiffs have failed to allege facts sufficient to support a plausible inference that defendants have breached their fiduciary duties. Plaintiffs purport to challenge defendants' administration and management of the Plans. But they actually attack the Plans' features—specifically their designs, numbers of recordkeepers, and administrative and investment fees. They do not allege any facts about defendants' fiduciary processes to support their conclusory allegations that those processes were flawed, or draw any connection between any fiduciary decision and any alleged losses to the Plans. Nor do they allege any facts suggesting that defendants' fiduciary processes were inferior to the processes other universities use. The Seventh Circuit has repeatedly rejected complaints with this formula, holding that allegations that a plan could have paid lower fees or offered better performing funds do not support a plausible inference of fiduciary breach because cost is only one of many factors prudent fiduciaries consider. *See Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). Thus, the Court should dismiss plaintiffs' claims.

## I. The Complaint Fails To Satisfy The Pleading Requirements Of Rule 8.

The complaint should be dismissed because plaintiffs fail to provide defendants fair notice of the claims against them. Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The primary purpose of [Rule 8] is to give defendants fair notice of the claims against them and the grounds supporting the claims," which requires a clear explanation of which defendant committed which alleged acts and when. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). Clarity and specificity are especially important where, as here, "the content of the duty of prudence turns on the circumstances" and requires a context-specific inquiry. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (internal quotation marks omitted).

"[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard*, 658 F.3d at 798.

Here, plaintiffs purport to assert claims for breaches of three ERISA fiduciary duties—prudence, loyalty, and monitoring of other fiduciaries. *See generally* Compl. ¶¶ 144–68. To state a claim, plaintiffs must allege that defendants are plan fiduciaries and that they breached their fiduciary duties, resulting in harm to plaintiffs. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005).

In their 76-page complaint, plaintiffs have pled both too much and too little to satisfy Rule 8. Throughout the complaint, plaintiffs allege that "defendants" failed to take certain actions, without identifying which of the ten defendants they are referring to. Plaintiffs catalog ways they contend the Plans could have saved money, but never connect those allegations to any specific decisions by any defendant that could have resulted in an actual loss to either Plan. These unconnected allegations are insufficient to state any claim.

***First***, plaintiffs have not pled a breach of the duty of prudence. Plaintiffs' results-oriented allegations assert that the Plans could have paid less and had better returns if defendants had created a different set of investment options. But the standard for determining prudence does not analyze results; rather, it examines the fiduciary's ***process*** and method of arriving at the challenged decision. *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7–8 (1st Cir. 2009). Plaintiffs cannot rest on conclusory allegations that defendants failed to fulfill their duties without identifying any fiduciary decision made by any defendant through any deficient process. *See, e.g.*, Compl. ¶ 70 ("Defendants failed to prudently monitor and control the compensation paid for recordkeeping and administrative services."). Moreover, as discussed in detail below, plaintiffs'

5

results-oriented allegations do not support an inference of fiduciary breach. The lack of specificity about any defendant's conduct is particularly problematic because plaintiffs assert claims against ten defendants stretching over a six-year class period, and it is apparent from plaintiffs' allegations that many of the defendants were not fiduciaries for much of that time. *See infra* § IV, p. 20. Plaintiffs' prudence-based claims (Counts I and II) fail to satisfy Rule 8.

*Second*, plaintiffs have not pled a breach of the duty of loyalty. Plaintiffs have not alleged that defendants were acting for the benefit of anyone but Plan participants, which is necessary to demonstrate a breach of the duty of loyalty. *See e.g.*, *Loomis*, 658 F.3d at 671 (dismissing breach of loyalty claims where "there [was] no reason to think that [defendant] chose these funds to enrich itself at participants' expense"). Plaintiffs cannot merge their loyalty claims into their prudence claims through conclusory allegations, *see, e.g.*, Compl. ¶¶ 145–48; 151–61, without alleging that any defendant acted for the benefit of someone other than the Plans and their participants. *White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at *4–5 (N.D. Cal. Aug. 29, 2016). Thus, the loyalty-based claims (Counts I and II) fail to satisfy Rule 8.

*Third*, plaintiffs have not pled a breach of the duty to monitor (Count III). Plaintiffs fail to allege whether any fiduciary duties have been delegated, and if they have, to whom, and fail to allege any facts suggesting that defendants' monitoring process was deficient. *See* Compl. ¶ 166 (alleging breach "[t]o the extent any of the defendants' fiduciary responsibilities were delegated to another fiduciary"). Plaintiffs' vague allegations that some defendant may have had some duty to monitor someone, and may have violated that duty, are entirely insufficient to satisfy Rule 8. *See White*, 2016 WL 4502808, at *18 (dismissing failure to monitor claim asserted "to the extent that any of [defendant's] fiduciary responsibilities were delegated to another fiduciary.").

## II.     The Complaint Fails To State A Claim.

Although plaintiffs' complaint contains multitudes of factual allegations, those allegations all fall into categories the Seventh Circuit has held are insufficient to support a plausible inference of fiduciary breach.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  Instead, plaintiffs' allegations must support a "reasonable inference that [defendants are] liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Where the facts alleged do not allow the Court to "infer more than the mere possibility of misconduct," the complaint should be dismissed.  *Id.* at 679.

The Seventh Circuit affirmed the dismissal of breach of fiduciary duty claims in *Hecker v. Deere*, based on principles that apply to all ERISA-governed retirement plans.  556 F.3d at 586–87.  The *Hecker* plaintiffs alleged that defendants breached their fiduciary duties by selecting investment options with excessive fees in their 401(k) plans.  Those plans offered 26 investment options and a brokerage window, which gave participants access to 2,500 additional funds.  *Id.*  Participants could choose from this large mix of investments, which offered a wide range of fees.  *Id.*  In affirming the dismissal of the complaint, the Seventh Circuit held that the "[p]lans offered a sufficient mix of investments for their participants."  *Id.*  Thus, defendants were not liable "[i]f particular participants lost money or did not earn as much as they would have liked, [because] that disappointing outcome was attributable to their individual choices." *Id.* at 590.  It also rejected plaintiffs' argument that it was imprudent for the fiduciary to allow an asset-based revenue-sharing fee arrangement, as opposed to a per-participant flat-fee

arrangement.  *Id*. at 585; *see Loomis*, 658 F.3d at 672.  Plaintiffs here make the same arguments about Northwestern's 403(b) plans, and those arguments fail because, as in *Hecker*, "no breach of fiduciary duty on [defendants'] part has been described."  556 F.3d at 586–87.

### A.    Plaintiffs Fail To Plead Facts To Support A Claim Based On Allegedly Excessive Investment Management Fees (Count II).

Plaintiffs' contention in Count II of the complaint that certain investment management fees were too high fails as a matter of law.  *Hecker* establishes that allegations that a plan offers a wide range of options and fees do not support an inference of fiduciary breach.  *Hecker*, 556 F.3d at 586–87.  Plaintiffs attempt to avoid *Hecker* by attacking the Plans' design, singling out two particular investments and mischaracterizing their performance, and noting recent changes to the Plans as evidence of past imprudence.  But these attacks do nothing to address the central flaw in plaintiffs' claims:  Bare allegations that participants were given too many investment options are insufficient to support a plausible inference that defendants' fiduciary process was flawed or that defendants breached their fiduciary duties.  Accordingly, Count II fails.

### 1.    Plaintiffs' Allegations That The Plans Offer Too Many Investment Options Are Insufficient.

Participant choice is a cornerstone of ERISA defined contribution plans.  In fact, ERISA "encourages sponsors to allow more choice to participants in defined-contribution plans." *Loomis*, 658 F.3d at 673.  Thus, a fiduciary who "has left choice to the people who have the most interest in the outcome . . . cannot be faulted for doing [so]."  *Id.* at 673–74.  The Seventh Circuit has held that offering a large number of investment options gives participants the power to control their investments in a meaningful way.  *See Hecker*, 556 F.3d at 586 (no breach of fiduciary duty where 401(k) plan participants could choose to invest in 26 investment options and more than 2,500 mutual funds through a brokerage window); *Loomis*, 658 F.3d at 669 (no breach of fiduciary duty where 401(k) plan offered 32 investment options); *accord Renfro v.*

*Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (no breach of fiduciary duty where 401(k) plan offered 73 investment options). Therefore, the number of the Plans' investment options does not, and cannot, imply that defendants' investment management process was flawed.

Courts have similarly concluded that offering higher-fee investment options as part of a wide range of options that also includes low expense ratio choices is a prudent way to allow 401(k) plan participants to decide how to take investment costs into account.[6] Retail-class funds have benefits that institutional funds do not, such as being "set against the backdrop of market competition," *Hecker*, 556 F.3d at 586, and higher liquidity, *Loomis*, 658 F.3d at 672. Including them among other options does not support a claim of imprudence because "[n]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586.

Having many investment options is an even more important way to provide participants with meaningful choice in 403(b) plans than in 401(k) plans like those at issue in *Hecker*. 403(b) plan fiduciaries are required to offer individual annuity contracts, which have relatively high fees, and cannot offer employer stock and other lower-cost options that are available in 401(k) plans. Moreover, 403(b) plan fiduciaries lack a contractual right to eliminate participant-owned annuity options. *See supra* at 2–3. Providing a wide array of options is thus essential to providing participant choice, which *Hecker* and *Loomis* recognize as a valid fiduciary goal.

Plaintiffs disagree. The heart of their claims is their assertion that the Plans offered too much choice. They allege that the Retirement Plan and the Voluntary Plan offered 242 and 187

---

[6] *See, e.g.*, *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (expense ratios between 0.03% to 2%); *White v. Chevron*, 2016 WL 4502808, at *11 (expense ratios between 0.05% and 1.24%); *Loomis*, 658 F.3d at 669-72 (ratios between .03% to .96%); *Renfro*, 671 F.3d at 319, 326-328 (ratios between 0.1% to 1.21%); *Hecker*, 556 F.3d at 586 (ratios between 0.07% and "just over 1%").

investment options, respectively, that "included retail and institutional share class mutual funds, an insurance separate account, variable annuity options, and a fixed annuity option." Compl. ¶¶ 28, 30. But these facts alone are not sufficient to state a claim. The expense ratios for these funds ranged between 0.04% and 1.89%. *Id*. ¶¶ 80, 92. Any participant who wanted a fund with low expenses could get one through the Plans.

Plaintiffs opine that defendants should have restricted participant choice by eliminating higher-cost options. But they never allege that participants who selected higher-cost options did not benefit from the additional features those options provide. Thus, as in *Hecker*, "the undisputed facts leave no room for doubt that the [Plans] offered a sufficient mix of investments for their participants" to choose from. *Hecker,* 556 F.3d at 586–87. "Unless *Hecker* is to be overruled, our plaintiffs cannot prevail." *Loomis*, 658 F.3d at 670.

### 2. Plaintiffs' Additional Allegations Also Are Insufficient.

Plaintiffs raise three sets of factual allegations that were not raised in *Hecker*. They contend that the number of options was confusing to participants, Compl. ¶ 155; they single out two specific investment options and assert that they were poor performers that should not have been offered, *id.* ¶¶ 101–33; and they point to recent changes to the Plans' investment options as evidence that the previous options were imprudent, *id.* ¶ 131. None of these allegations is sufficient to support an inference that defendants' fiduciary decisions or processes were flawed.

*First*, plaintiffs' allegations of confusion fail to state a claim because they fail to identify any resulting injury. Moreover, the decision to offer many options, rather than fewer, "bears more resemblance to the basic structuring of a Plan than to its day-to-day management." *Hecker*, 556 F.3d at 586. Under ERISA, plan structure is not a fiduciary function, and so structural design choices cannot be the basis for breach of fiduciary duty claims. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). This is particularly true in the 403(b) context, because, as discussed

10

above, the Plans' design was heavily influenced by their legal and regulatory history. *See, e.g*, Aon Hewitt, *How 403(b) Plans Are Wasting Nearly $10 Billion Annually,* at 2 ("From 1958 until the inception of ERISA in 1974, annuities were the only investment vehicle available within 403(b) plans.") (cited at Compl. ¶ 56 and attached as Ex. K).

**Second**, plaintiffs' allegations criticizing the performance of the CREF Stock Account and the TIAA Real Estate Account do not support an inference that defendants breached their fiduciary duties.[7]  As an initial matter, neither plaintiff alleges that she invested in either fund option or suffered any injury as a result.  Additionally, the Seventh Circuit has held that even if funds perform poorly, "investment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006).  Thus, alleged underperformance in two investment options is not sufficient to support a claim of fiduciary breach.

**Third**, the fact that defendants changed the Plans' investment options in 2016, also is insufficient to support their claims of fiduciary breach.  A fiduciary's "decision to change funds [does] not sustain allegations that [any fund] was an imprudent choice previously." *Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*, No. 11-cv-5127, 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012), *aff'd*, 513 F. App'x 78 (2d Cir. 2013).  It would discourage fiduciaries from

---

[7] The underlying documents on which plaintiffs rely call into question whether the two funds were actually underperforming.  The CREF Stock Account is a global equity fund and cannot reasonably be compared to a domestic large cap equity fund, as plaintiffs have done. *See* TIAA, *Retirement Plan Variable Annuities: CREF Accounts Prospectus*, 62 (May 1, 2016), available at http://www.tiaa.org/public/prospectuses/cref_prospectus.pdf?fundclass=RPVA.  A comparison to the correct blended index shows that the fund has tracked its index closely over the last ten years, averaging annual returns of 5.78% as compared to the benchmark 5.96%. *Id*. at 61.  The TIAA Real Estate Account is actively managed and is a variable option available only to participants invested in certain TIAA annuity contracts.  TIAA, *TIAA Real Estate Account Prospectus* 3 (May 1, 2016), available at https://www.tiaa.org/public/pdf/realestate_prosp.pdf.  Plaintiffs compare it to the Vanguard REIT index, which is an index that holds REITS.  Vanguard, *Vanguard REIT Index Fund Prospectus* 12 (May 25, 2016), available at https://www.vanguard.com/pub/Pdf/i3123.pdf.  Even if this were a correct comparison, the TIAA Real Estate Account has outperformed the Vanguard REIT index every other year for the last six years. *Compare id.* at 3, *with TIAA Real Estate Account Prospectus*, *supra* note 40, at 11.

making prudent changes "to embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence." *Id.* Thus, recent Plan changes do not support an inference of past imprudence. Rather, they indicate that defendants were monitoring regulatory changes and industry best practices, and adapting the Plans accordingly.

> **B.** **Plaintiffs Fail To Plead Facts To Support Any Claim Based On Allegedly Excessive Recordkeeping Fees (Count I).**

In Count I, plaintiffs argue that the Plans' use of two recordkeepers, whose recordkeeping fees are asset-based, resulted in excessive fees. But, again, plaintiffs' conclusory allegations and assertions that reasonable fees could be lower are insufficient to support a plausible inference that defendants breached their fiduciary duties.

Applying *Hecker*, the Seventh Circuit has upheld the dismissal of claims about administrative fees (such as recordkeeping). *See Loomis*, 658 F.3d 667. In *Loomis,* plaintiffs attempted to distinguish *Hecker* by arguing that case addressed investment fees, and not administrative fees. *Loomis v. Exelon Corp.*, No. 06-cv-4900, 2009 WL 4667092, at *4 (N.D. Ill. Dec. 9, 2009) ("*Loomis I*"), *aff'd*, 658 F.3d 667 (7th Cir. 2011). The district court rejected the argument, explaining that the expense ratios at issue in *Hecker* included both investment fees and administrative fees, and that the total fee is the critical figure. *Id.* The Seventh Circuit affirmed the dismissal, holding *Hecker's* reasoning applies with equal force to claims about administrative fees. *Loomis*, 658 F. 3d at 670.

To state a claim for breach of fiduciary duty through excessive fees, plaintiffs must plead facts showing "that the fees were excessive relative to the services rendered." *Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (internal quotation marks and citations omitted). Plaintiffs must also allege that the allegedly excessive fees were caused by some failure to follow a prudent process. *See Brock v. Robbins*, 830 F.2d 640, 647–48 (7th Cir. 1987)

12

(distinguishing between the prudence of a fiduciary's process in agreeing to a fee and the reasonableness of the fee itself).

Accordingly, courts have rejected complaints challenging recordkeeping fees that fail to plead facts supporting an inference that lower fees for comparable services were available, and that prudent fiduciaries following a prudent process would have acted to obtain those fees. *See, e.g.*, *White*, 2016 WL 4502808, at *14 (dismissing claims where plaintiffs failed to plead same services available for less); *Loomis I*, 2009 WL 4667092, at *4 (dismissing challenge to per-participant fees). For example, because "nothing in ERISA compels periodic competitive bidding," an allegation that no such process occurred is inadequate to support an inference that bidding would have resulted in lower fees. *White*, 2016 WL 4502808, at *14 ("[T]he allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation.").[8] Similarly, because asset-based recordkeeping fee arrangements "violate[] no statute or regulation," the Seventh Circuit has consistently rejected the argument that the use of asset-based fee arrangements supports an inference of fiduciary breach. *Hecker*, 556 F.3d at 585; *see also Loomis I*, 2009 WL 4667092, at *5 ("[A]sset-based fee schedules are permissible under *Hecker*."); *Loomis*, 658 F.3d at 672 (recognizing that "flat payments per participant may help some participants but hurt others"); *accord White*, 2016 WL 4502808, at *14 (holding that the use of asset-based fees "is a 'common' and 'acceptable' investment industry practice that 'frequently inure[s] to the benefit of ERISA plans.") (citations omitted).

---

[8] *George v. Kraft Foods Global, Inc.*, which plaintiffs cite in their complaint, did not create a *per se* requirement of requesting bids. 641 F.3d 786, 798-99 (7th Cir. 2011). "*George's* analysis has no application" because "plaintiffs do not even allege that a competitive bid would have benefitted the Plan or the Plan participants, because they do not allege any facts from which one could infer that the same services were available for less on the market." *White*, 2016 WL 4502808, at *14.

Here, plaintiffs' allegations that the Plans' recordkeeping fees were too high do not support an inference of fiduciary breach. Plaintiffs allege that, using two recordkeepers, the Retirement Plan paid $153 to $213 per participant per year from 2010 to 2015, that the Voluntary Plan paid $54 to $87, and that a reasonable fee would be a flat fee of $35 dollars per participant. Compl. ¶¶ 65–67. They assert that defendants should have solicited bids and hired a single recordkeeper at this price. *Id.* ¶ 60. But plaintiffs do not identify any recordkeeping company that would accept a $35 rate to perform the same services that the Plans received from their two recordkeepers, or that one recordkeeper would or could perform those services (support both the complex annuity contracts offered by TIAA-CREF and the mutual fund options available through Fidelity) at any price.

Plaintiffs mask the conclusory nature of their $35 mandate by asserting it is based on the nature of the administrative services provided, the number of participants, and "the recordkeeping market." *Id.* ¶ 65. But plaintiffs' factual allegations contradict their conclusory assertion that paying more than $35 per participant, or using two recordkeepers, evidences a fiduciary breach. First, the Plans' alleged fees are lower than those paid by other similar university plans. *See, e.g.*, *Vellali v. Yale Univ.*, No. 16-cv-1345, ECF No. 1, ¶ 60 (D. Conn. Aug. 9, 2016) (alleging fees between $200-$300 per participant per year from 2010 to 2014); *Clark v. Duke Univ.*, No. 16-cv-1044, ECF No. 1, ¶ 59 (M.D.N.C. Aug. 10, 2016) (alleging fees of $280 per participant per year from 2010 to 2014). In addition, similar university plans use even more recordkeepers. *See, e.g.*, *Kelly v. Johns Hopkins Univ.*, No.16-cv-2835, ECF No. 1, ¶ 22 (D. Md. Aug. 11, 2016) (alleging use of five recordkeepers); *Clark v. Duke Univ.*, No. 16-cv-1044, ECF No. 1, ¶ 51 (M.D.N.C. Aug. 10, 2016) (alleging use of four recordkeepers); *Cassell v. Vanderbilt Univ.*, No. 16-cv-2086, ECF No. 1, ¶ 56 (M.D. Tenn. Aug. 10, 2016)

(alleging use of four recordkeepers).  By comparison, the Plans' two recordkeepers and alleged recordkeeping fees of $54 to $213 per participant appear modest.

Second, the many articles plaintiffs cite undercut any inference that the Plans' recordkeeping arrangements are the result of fiduciary malfeasance.  These articles observe that "[t]he most prevalent model by far . . . in many 501(c)(3) organizations, is the multi-recordkeeper platform" and that it is "not uncommon" for a plan to have "10, 20, or even 50-plus insurance and mutual-fund companies as recordkeepers."  The Standard Retirement Services, Inc., *Fixing Your 403(b) Plan: Adopting a Best Practices Approach* (Nov. 2009), at 1 (cited at Compl. ¶ 54 and attached as Ex. L).  The articles further explain that, due to the unique reliance of 403(b) plans on offering annuities, it may be impossible to consolidate to a single recordkeeper "because of the existence of individual contracts between the participant and the recordkeeper(s)."  Aon Hewitt at 7.  Thus, the articles recommend "consolidation to one *or two* vendors"—the number plaintiffs allege the Plans use.  *See* PlanSponsor, *Vendor Consolidation in Higher Education: Getting More from Less*, at 2 (July 29, 2010) (emphasis added) (cited at Compl. ¶ 59 and attached as Ex. M); *see* Aon Hewitt at 5 (recommending plans consolidate "to a single *or reduced* number of providers" (emphasis added)).  One article advises that "[a] move to *two vendors* can allow for" appropriate administrative support "while still providing participants with the choice they value."  PlanSponsor at 3 (emphasis added).  None of the articles state that recordkeeping services are available to the Plans (or to any other 403(b) plan) for $35 per participant.  Even if they did, plaintiffs' allegations still would be insufficient to support an inference of breach of fiduciary duty with respect to recordkeeping fees.

Accordingly, Count II should be dismissed.

**C.      Plaintiffs' Complaint Allegations Establish That ERISA's Safe Harbor Provision Bars Their Claims (Counts I–III).**

The complaint should be dismissed for the additional, independent reason that plaintiffs' allegations demonstrate that ERISA's safe harbor provision, 29 U.S.C. § 1104(c), bars plaintiffs' claims.[9]  ERISA's safe harbor provision precludes fiduciary liability for investment losses where the fiduciary "satisfies the criteria of § 1104(c) and includes a sufficient range of options so that the participants have control over the risk of loss." *Hecker*, 556 F.3d at 589.[10]  Here, plaintiffs have pled all four of the elements necessary to show that the criteria of § 1104(c) have been satisfied, and they have failed to plead any injury exempted from the provision.

First, the Plans' participants "have the right to exercise independent control over the assets in [their] account[s] and in fact exercise such control." *Hecker*, 556 F.3d at 587.  All of plaintiffs' claims stem from their central complaint that the Plans allowed participants to exercise complete control over their investments.[11]  *See generally* Compl.; Summary Plan Description ("SPD," attached as Ex. C) at 28–32.  Second, participants are able to choose "from a broad range of investment alternatives," 29 C.F.R. § 2550.404c–1(b)(1)(ii);  Compl. ¶¶ 28, 30; Ex. C at 24–27.  Third, as set forth in detail in the chart that is Exhibit G, the Plans satisfy the nine criteria required for their participants to be considered to have "sufficient information to make informed decisions with regard to investment alternatives available under the plan." *Hecker*, 556 F.3d at

---

[9] As in *Hecker*, the Court may dismiss the complaint based on the safe harbor defense because the complaint's allegations "establish all the ingredients of the defense." *Hecker*, 496 F. Supp. 2d at 975 (W.D. Wis. 2007), *aff'd*, 556 F.3d 575 (7th Cir. 2009).  The Plans' documents, Summary Plan Descriptions, and prospectuses are all considered part of the complaint. *Hecker*, 556 F.3d at 583.

[10] Under § 1104(c), "if a participant or beneficiary exercises control over the assets in his account," then "no person who is otherwise a fiduciary shall be liable . . . for any loss, or by reason of any breach, which results from such participant's . . . exercise of control." 29 U.S.C. § 1104(c)(1).

[11] Plaintiffs' complaints about multiple recordkeepers and the related fees are a direct result of the Plans' robust investment lineup and the two recordkeeper structure it requires. *See Loomis I*, 2009 WL 4667092, at *2, *4.

587 (quoting § 2550.404c–1(b)(2)(i)(B)).  Fourth, the Plans "furnish extensive information on the operating expenses of the investment alternatives, copies of relevant financial information, and other similar materials."  *Hecker*, 556 F.3d at 587; § 2550.404c–1(b)(2)(i)(B)(2).  They also inform participants of expenses incurred, satisfy the required frequency of investment instructions, and disclose all "material non-public facts regarding the investment."  *Hecker*, 556 F.3d at 587; § 2550.404c1(c)(2)(ii); *see* Ex. C at 27 (directing participants to publicly available fund prospectuses).  "Given the numerous investment options, varied in type and fee," the safe harbor provision applies here, and protects defendants from being "held responsible for [a participant's investment] choices."  *Hecker*, 556 F.3d at 590.  The complaint should therefore be dismissed for this additional, independent reason.

### III.  Plaintiffs Lack Standing And A Statutory Right To Sue.

The complaint should be dismissed for the additional reason that plaintiffs have failed to plead facts that demonstrate they have standing to bring their claims.  *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981) ("A court lacks discretion to consider the merits of a case over which it is without jurisdiction.").  Plaintiffs must demonstrate that they have standing to bring this case by pleading facts of a particularized injury.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016).

Plaintiffs lack Article III standing to bring this case because they have failed to allege they have personally suffered any actual, concrete, and particularized injury that affects plaintiffs in a personal and individual way, is fairly traceable to defendants, and is redressible by a favorable decision of the Court.  *Id.* at 1547–48 (internal quotation marks and citations omitted). In ERISA cases, the alleged injury must be individualized to the participant, and not to the plan generally, or the plaintiffs lack Article III standing, and the Court lacks subject-matter jurisdiction over the lawsuit.  *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *see also*

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding plaintiffs who suffer no individualized harm lack standing); *Meyers v. Oneida Tribe of Indians of Wis.*, No. 15-3127, 2016 WL 4698949, at *2 (7th Cir. Sept. 8, 2016) ("It is certainly true that a court may not decide the merits of a case without subject matter jurisdiction.").

Here, plaintiffs allege, on one hand, that the Plans paid excessive fees, Compl. ¶¶ 144–68, and on the other, that plaintiffs participated in the Retirement Plan, *id.* ¶¶ 17–18. But they fail to connect these two sets of allegations by pleading that either plaintiff suffered an individual injury through any specific investment, and their standing is lost in the resulting gap. Plaintiffs do not identify their individual investments in the Retirement Plan, much less allege they paid excessive fees or suffered poor performance. As a result, the Court should dismiss the entire complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Moreover, plaintiffs were neither participants in nor beneficiaries of the Voluntary Plan. Compl. ¶¶ 17–18. Accordingly, they have no cause of action under ERISA to attack that Plan. 29 U.S.C. § 1132(a) (authorizing a participant or beneficiary to bring a claim with respect to a plan); *see Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016). Therefore, all claims relating to the Voluntary Plan should be dismissed for this additional, independent reason.

## IV.     Plaintiffs' Claims Are Time Barred.

To be timely, claims for breach of ERISA fiduciary duties must be brought within three years of plaintiffs' actual knowledge of the alleged breach. 29 U.S.C. § 1113.[12] Plaintiffs have actual knowledge when they know "the essential facts of the transaction or conduct constituting

---

[12] Because plaintiffs allege that the Plans' challenged arrangements have been in place since long before 2009, *see* Compl. ¶¶ 66, 67, 101, 112, 120, 121, their claims would be time barred even if the Court applied the six-year limitation in § 1113.

the violation," and "it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996) (internal quotation marks and citations omitted). Plaintiffs' knowledge should be considered in the context of the "complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992).

Dismissal of plaintiffs' claims is appropriate when all of the information that forms the basis of the complaint was disclosed to participants more than three years before a claim is brought. *See Young v. GM Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009) (dismissing a claim as time barred because "[t]he allegedly excessive fees that form the central basis of [the] claim were readily apparent from the information provided to all Plan participants more than three years before Plaintiffs filed this suit"); *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (holding plaintiffs charged with actual knowledge of information in plan documents).

Here, the essential facts that form the basis of plaintiffs' complaint are the number of investment options available through the Plans, the number of recordkeepers used by the Plans, and the fees associated with the Plans. Department of Labor regulations have required that participants receive detailed disclosures of these facts since 2012. 29 C.F.R. § 2550.404a-5 (effective Dec. 20, 2010).[13] And all of the essential facts—the Plans' service providers, investment options, and total associated fees—have been subject to mandatory disclosure for much longer. *See* Annual Reporting and Disclosure, 72 Fed. Reg. 64, 710 (Nov. 16, 2007) (describing enhanced fee and expense disclosures to be effective January 15, 2008, under 29

---

[13] *See also* U.S. Department of Labor, Fact Sheet on Final Regulation Relating to Service Provider Disclosures Under Section 408(b)(2), Feb. 2012 (attached as Ex. N).

C.F.R. § 2520).  Plaintiffs do not allege that defendants ever failed to make these mandatory disclosures, and a review of the Plans' governing documents and required disclosures to participants demonstrates that they did.[14]  *See* Ex. C at 28–32; 2016 Investment Menu Redesign Guide (Ex. D).  Accordingly, plaintiffs' claims in their August 17, 2016, complaint are untimely.

## V.    Plaintiffs' Claims As To The NURIC Defendants Arising Before 2012 Fail.

All claims that NURIC or the individual defendants breached their fiduciary duties before 2012 fail because under ERISA § 409(b), defendants cannot be liable for any alleged breaches committed before they became fiduciaries.  29 U.S.C. § 1109(b); *see Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010).  Plaintiffs allege that NURIC was established in 2012, and do not allege that any of the individual defendants was a fiduciary other than through membership in NURIC.  *See* Compl. ¶ 21.  Accordingly, all claims against NURIC and the individual defendants arising before 2012 should be dismissed.

## CONCLUSION

For all the foregoing reasons, plaintiffs' complaint should be dismissed in its entirety.

Dated: November 7, 2016

Respectfully submitted,


By:  */s/ Craig C. Martin*
        Craig C. Martin
        Amanda S. Amert
        Casey T. Grabenstein
        Monica M. Perdomo
        JENNER & BLOCK LLP
        353 N. Clark Street
        Chicago, IL 60654-3456
        Phone:  (312) 222 9350

        Attorneys for Defendants

---

[14] The Plans disclose the gross expense ratio for each investment option, which includes all of the different kinds of expenses that plaintiffs attack.  *See, e.g.*, Compl. ¶¶ 35–36 (cataloging fees associated with investment options); Northwestern 403(b) Retirement Plans Investment Options Guide (Ex. E).

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on November 7, 2016, a true and correct copy of **Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: November 7, 2016

Respectfully submitted,

By:   _/s/ Craig C. Martin_
       Craig C. Martin
       Amanda S. Amert
       Casey T. Grabenstein
       Monica M. Perdomo
       JENNER & BLOCK LLP
       353 N. Clark Street
       Chicago, IL 60654-3456
       Phone:  (312) 222 9350

       Attorneys for Defendants