IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Laura A. Divane, April Hughes, Susan Bona, Katherine Lancaster, and Jasmine Walker, <br><br> Plaintiffs, <br><br> vs. <br><br> Northwestern University, Northwestern University Retirement Investment Committee, Pamela S. Beemer, Ronald Braeutigam, Kathleen Hagerty, Craig A. Johnson, Candy Lee, William McLean, Ingrid S. Stafford, Nimalan Chinniah, and Eugene S. Sunshine, <br><br> Defendants. | CASE NO. 16-CV-8157 <br> JUDGE JORGE L. ALONSO |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Background ...................................................................................................................2

Argument ....................................................................................................................4

I.   The Complaint Fails To State A Claim.................................................................4

    A.  Plaintiffs Fail to Adequately Plead Fiduciary Status (Counts I–VII). ...............................8

    B.  Plaintiffs Fail To State A Claim Based On Locking In TIAA-CREF Funds (Counts I and II)................................................................................10

    C.  Plaintiffs Fail To State A Claim Based On Allegedly Excessive Recordkeeping Fees (Counts III and IV). ....................................................................13

    D.  Plaintiffs Fail To State A Claim Based On Allegedly Excessive Investment Management Fees (Counts V and VI). ..................................................17

    E.  Plaintiffs Fail To State A Claim For Failure To Monitor (Count VII). ...........................20

II.  Plaintiffs' Claims Are Time Barred.................................................................22

III. Plaintiffs' Claims Are Barred By ERISA's Safe Harbor Provision. ......................................24

Conclusion ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**SUPREME COURT CASES**

*Amgen Inc. v. Harris*,
    136 S. Ct. 758 (2016) ........................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 5, 15, 16, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 5, 15

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ................................................................................ 6, 10

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ........................................................................................ 8

**SEVENTH CIRCUIT CASES**

*Bausch v. Stryker Corp.*,
    630 F.3d 546 (7th Cir. 2010) .......................................................................... 5

*Brock v. Robbins*,
    830 F.2d 640 (7th Cir. 1987) ........................................................................ 13

*Brosted v. Unum Life Ins. Co. of Am.*,
    421 F.3d 459 (7th Cir. 2005) .............................................................. 5, 6, 10, 21

*Hecker v. Deere & Co.*,
    556 F.3d 575, 586–87 (7th Cir. 2009) .......................................................... passim

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ................................................................... 6, 8, 21

*Jenkins v. Yager*,
    444 F.3d 916 (7th Cir. 2006) ........................................................................ 18

*Keach v. U.S. Trust Co.*,
    419 F.3d 626 (7th Cir. 2005) ..................................................................... 7, 10

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ........................................................... 13, 17, 18, 19

*Martin v. Consultants & Adm'rs, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ...................................................................... 22

*Olson v. Champaign Cty., Ill.*,
   784 F.3d 1093 (7th Cir. 2015) .................................................................5

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
   786 F.3d 510 (7th Cir. 2015) ...................................................................5

*Rush v. Martin Petersen Co., Inc.*,
   83 F.3d 894 (7th Cir. 1996) ...................................................................22

*Stanard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ...............................................................5, 7

**OTHER CIRCUIT AUTHORITIES**

*Brown v. Owens Corning Inv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010) ...............................................................22

*Bunch v. W.R. Grace & Co.*,
   555 F.3d 1 (1st Cir. 2009) ....................................................................13

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996) ...............................................6, 10, 11, 17

*Jordan v. Mich. Conference of Teamsters Welfare Fund*,
   207 F.3d 854 (6th Cir. 1999) ...............................................................10

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987) ..............................................................21

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ..................................................................5

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) ..............................................................10, 12

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) .............................................................18, 19

*Tibble v. Edison Int'l*,
   729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823
   (2015) .................................................................................................19

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) ...............................................................12

**DISTRICT COURT CASES**

*Abbott v. Lockheed Martin Corp.*,
   No. 06-cv-701, 2009 WL 839099 (S.D. Ill. Mar. 31, 2009) ....................................23

*Cassell v. Vanderbilt Univ.*,
   No. 16-cv-2086, (M.D. Tenn. Aug. 10, 2016) .........................................................16

*Clark v. Duke Univ.*,
   No. 16-cv-1044, (M.D.N.C. Aug. 10, 2016)......................................................15, 16

*In re Calpine Corp. ERISA Litig.*,
   No. 03-cv-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ............................21

*In re Sears, Roebuck & Co. ERISA Litig.*,
   No. 02-cv-8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) (Darrah, J.) .................9

*In re Xcel Energy, Inc., Sec., Derivatives, & "ERISA" Litig.*,
   312 F. Supp. 2d 1165 (D. Minn. 2004) ....................................................................21

*Kelly v. Johns Hopkins Univ.*,
   No.16-cv-2835, (D. Md. Aug. 11, 2016) ..................................................................15

*Kouba v. Joyce*,
   No. 83-cv-451, 1987 WL 33370 (N.D. Ill. Dec. 31, 1987) (Nordberg, J.) ..............14

*Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*,
   No. 11-cv-5127, 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012), *aff'd*, 513 F.
   App'x 78 (2d Cir. 2013).....................................................................................14, 19

*Lingis v. Motorola, Inc.*,
   649 F. Supp. 2d 861 (N.D. Ill. 2009) (Pallmeyer, J.)..............................................21

*Loomis v. Exelon Corp.*,
   No. 06-cv-49, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009) (Darrah, J.) .....................13, 18, 20

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010)
   (Pallmeyer, J.) ......................................................................................................8, 20

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   No. 15-cv-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016) ...........................7, 9

*Vellali v. Yale Univ.*,
   No. 16-cv-1345, (D. Conn. Aug. 9, 2016) ...............................................................16

*White v. Chevron Corp.*,
   No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ................... passim

*Young v. GM Inv. Mgmt. Corp.*,
   550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009).......................22

**STATUTES**

26 U.S.C. §§ 403(a)(1), (b)(7) ...............................................................................................2

29 U.S.C. § 1002(21)(B)......................................................................................................10

29 U.S.C. § 1104.............................................................................................................6, 24

29 U.S.C. § 1106...........................................................................................................7, 17

29 U.S.C. § 1108(b)(2) .................................................................................................12, 14

29 U.S.C. § 1109(b)..............................................................................................................8

29 U.S.C. § 1113.........................................................................................................22, 23

Internal Revenue Code § 501(c)(3)......................................................................................2

**OTHER AUTHORITIES**

29 C.F.R. § 2509.75-8.....................................................................................................6, 20

29 C.F.R. § 2520...............................................................................................................23

29 C.F.R. § 2550.404.................................................................................................22, 24, 25

72 Fed. Reg. 64710 (Nov. 16, 2007).................................................................................23

In their original complaint, plaintiffs offered a generic critique of the structure of university retirement plans that was too vague to state a claim on which relief could be granted. Plaintiffs editorialized that university plan fiduciaries should minimize the number of investment options available to participants in order to reduce fees paid to plan service providers. Because the Seventh Circuit has flatly rejected plaintiffs' premise that offering a wide array of investment options constitutes a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), and because plaintiffs' vague allegations failed to state a claim, defendants moved to dismiss. In response, plaintiffs filed their amended complaint (the "Complaint"), which added sixty-five pages of additional allegations, and categorized their claims into seven overlapping counts.

The added structure and detail in plaintiffs' Complaint do not patch the holes in plaintiffs' theories. They only make plaintiffs' inability to state a valid claim for breach of any fiduciary duty more plain, because the actual facts plaintiffs plead contradict their conclusory allegations. Plaintiffs' specific allegations about the nature of the Plans' relationship with TIAA-CREF undermine—rather than support—their vague allegations that defendants' fiduciary decisions were improper. Plaintiffs continue to base their claims on allegations that lower fees were available without identifying any alleged deficiencies in defendants' fiduciary processes, the exact approach repeatedly rejected by the Seventh Circuit. They also continue to ignore the differences between corporate 401(k) plans and not-for-profit 403(b) plans like Northwestern's. Moreover, plaintiffs still fail to connect any specific defendant or any specific fiduciary act to any alleged breach, or otherwise to plead the essential elements of their fiduciary breach claims, or to explain how their claims fall within ERISA's time limitations.

Accordingly, this Court should dismiss plaintiffs' Complaint in its entirety.

## BACKGROUND

Plaintiffs allegedly participate in the Northwestern University Retirement Plan (the "Retirement Plan") and the Northwestern University Voluntary Savings Plan (the "Voluntary Plan" and, collectively, the "Plans").[1]  Am. Compl. ¶¶ 19–23.  They assert ERISA claims for breaches of fiduciary duty, pursuant to ERISA § 502(a)(2).  Defendants Northwestern University, Nimalan Chinniah,[2] and Eugene S. Sunshine are the named fiduciaries and plan administrators for the Plans.  *Id.* ¶¶ 25, 28–30.  The remaining defendants are the Northwestern University Retirement Investment Committee ("NURIC"), and six individuals who are members of NURIC.  After creating NURIC in 2012, Northwestern delegated to it fiduciary responsibility for the administration and investment of the Plans' assets.  *See id.* ¶ 31.

Section 403(b) defined contribution plans like the Plans are available to certain tax exempt organizations in accordance with § 501(c)(3) of the Internal Revenue Code.[3]  They are designed especially for not-for-profit organizations, and are intended to keep "costs and responsibilities [of the institution] . . . minimal" to make them "affordable for not-for-profit organizations."  *Id.* at 8.  Section 403(b) plans may offer as investment options ***only*** annuity contracts or mutual funds held in custodial accounts.  26 U.S.C. §§ 403(a)(1), (b)(7).[4]  Thus, "many 403(b) plans have consisted solely of participant-owned annuity contracts and/or custodial accounts," wherein "plan participants possessed many (and sometimes all) of the

---

[1] For purposes of this Motion only, defendants take the factual allegations in the Complaint as true. The 2015 Northwestern University Retirement Plan Document is attached as Exhibit A ("Ex. A").  The 2015 Northwestern University Voluntary Savings Plan Document is attached as Exhibit B ("Ex. B").

[2] Concurrently with this Motion, Defendants have filed a Motion to Correct the Docket to reflect the correct spelling of Mr. Chinniah's first name.

[3] *See* Advisory Council on Employee Welfare and Pension Benefit Plans Report to the Honorable Hilda L. Solis, U.S. Secretary of Labor, *Current Challenges and Best Practices for ERISA Compliance for 403(b) Plan Sponsors*, at 5 (Nov. 2011) ("Advisory Council Report") (attached as Ex. J).

[4] These complex regulations are explained in the Advisory Council Report at 8.

contractual rights associated with these accounts or contracts."  Advisory Council Report at 5.

Consistent with the law, Northwestern's Plans include annuities and mutual funds offered

through TIAA-CREF and Fidelity.  Am. Compl. ¶ 111.

Thus, like many § 403(b) plans, the Plans have provided participants a wide range of

investment options, not by offering the array of types of investment vehicles available in

§ 401(k) plans, but by offering many options in the two categories permitted in § 403(b) plans.[5]

Until October 2016, participants in the Retirement Plan could choose from among 242 such

options offered through TIAA-CREF and Fidelity.  Am. Compl. ¶¶ 110, 113.  Participants in the

Voluntary Plan could choose from among 187 options, also offered through TIAA-CREF and

Fidelity.  *Id.* ¶¶ 110, 115.

In 2012, NURIC was established and given "all discretionary authority and powers

necessary to manage the assets of the Plan."  *Id.* ¶ 31.  Under a new design rolled out during

2016, the Plans' investment options now consist of thirty-two options available through TIAA-

CREF and Fidelity, and a brokerage window offering participants access to investments outside

of the Plans' core options.  *Id.* ¶¶ 123-28; *see* Ex. H (listing the current investment options).

Investment management, recordkeeping, and other fees are assessed based on the particular

investment options each participant chooses.  *See, e.g.*, Am. Compl. ¶¶ 53–54, 120–21.

According to annual filings with the Department of Labor, the Plans have used TIAA-

CREF as a service provider, and offered the TIAA Traditional Annuity, since before 2009.

Voluntary Plan Form 5500, Sch. C (attached as Ex. G); Retirement Plan Form 5500, Sch. C

---

[5] Traditionally, § 403(b) plans gave participants significant individual autonomy in selecting investments and operated much like individual retirement accounts.  *See* Emp. Benefits Sec. Admin., U.S. Dep't of Labor, Field Assistance Bulletin, No. 2009-02 (July 20, 2009) (attached as Ex. K).  Since the IRS implemented regulations in 2009, employers have begun to exercise more control over the administration of these plans.

(attached as Ex. F).  In order for the Plans to offer the TIAA Traditional Annuity, TIAA-CREF also required them to offer the CREF Stock Account and Money Market Account, and to use TIAA as recordkeeper for TIAA-CREF products.  Am. Compl. ¶¶ 130, 187.  As of the end of 2009, the Plans had investments totaling $663,338,478 in the TIAA Traditional Annuity, $468,090,928 in the CREF Stock Account, and $70,637,096.00 in the CREF Money Market Account, out of $1,830,178,713 total Plan assets.  Ex. G, Sch. H at 18–24; Ex. F, Sch. H at 19–25.  The TIAA Traditional Annuity imposes severe restrictions and penalties for withdrawal if funds are moved from that option to a different investment option in the Plans.  Am. Compl. ¶¶ 117, 132 (discussing 2.5% penalty for withdrawing savings as a single lump sum).

In their Complaint, plaintiffs assert seven counts alleging breaches of fiduciary duty.  In Counts I, III, and V, plaintiffs allege that defendants breached their fiduciary duties by allowing the Plans to pay excessive fees.  *Id.* ¶¶ 232–73.  In Counts II, IV, and VI, plaintiffs allege that defendants breached their fiduciary duties by causing the Plans to engage in prohibited transactions—*i.e.*, payment of the allegedly excessive fees.  *Id.* ¶¶ 240–78.  In Count VII, plaintiffs allege that certain defendants breached their duty to monitor other fiduciaries.  *Id.* ¶¶ 279–86.  But none of these claims meets the most basic pleading requirement: alleging the essential elements of plaintiffs' claims.

## ARGUMENT

The Seventh Circuit has held that allegations that fiduciaries failed to obtain the lowest available fees, without more, do not state a claim for breach of fiduciary duty.  Because plaintiffs' claims boil down to just that, their Complaint should be dismissed.

## I.   The Complaint Fails To State A Claim.

To survive a motion to dismiss for failure to state a claim, plaintiffs must satisfy the pleading requirements of Federal Rule of Civil Procedure 8.  The primary purpose of Rule 8 "is

to give defendants fair notice of the claims against them and the grounds supporting the claims," which requires a clear explanation of which defendant committed which alleged acts and when. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). Plaintiffs "must include enough details about the subject-matter of the case to present a story that holds together." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (internal quotation marks and citations omitted). Thus, plaintiffs' failure to allege each element of each claim beyond "'naked assertion[s]' devoid of 'further factual enhancement'" merits dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (original alteration) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiffs cannot simply recite the elements of their claims and make conclusory assertions that those elements are satisfied. They must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, plaintiffs' allegations must allow the Court to "infer more than the mere possibility of misconduct," and support a "reasonable inference that [defendants are] liable for the misconduct alleged."[6] *Iqbal*, 556 U.S. at 678-79.

To state any claim for breach of fiduciary duty under ERISA, plaintiffs must allege that defendants are plan fiduciaries, that they breached their fiduciary duties, and that their breach resulted in harm to plaintiffs. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir.

---

[6] Plaintiffs' "pleading burden should be commensurate with the amount of information available to them." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)). Accordingly, the Court should look more harshly on the Complaint's failings because plaintiffs had the benefit of defendants' initial motion to dismiss while drafting it. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013).

2005).  Each element must be pled.  *See id.*  Thus, "[i]f a particular defendant is not a fiduciary, then nothing more need be said.  Similarly, even if a particular defendant is a fiduciary, if it did not breach any fiduciary duty, then there is no need to reach the question whether its actions harmed the plaintiffs."  *Howell v. Motorola, Inc.*, 633 F.3d 552, 562 (7th Cir. 2011).

Depending on the nature of the alleged breach, plaintiffs also must plead additional facts. For example, to allege a breach of the duty of prudence in connection with an investment decision, plaintiffs must allege that defendants used inappropriate methods to execute their duties.  *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996).  Clarity and specificity in pleading are especially important, because "the content of the duty of prudence turns on the circumstances" and requires a context-specific inquiry.  *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (internal quotation marks omitted).

Other alleged breaches require different pleading.  To allege a breach of the duty of loyalty, plaintiffs must allege that defendants acted for some reason other than "the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and defraying reasonable expenses of administering the plan."[7]  29 U.S.C. § 1104(a)(1)(A).  To allege a breach of the duty to monitor, plaintiffs must allege that defendants failed to select or retain appropriate people to appoint as fiduciaries, or failed to implement a procedure to periodically review their compliance with Plan provisions and the law.  29 C.F.R. § 2509.75-8; *Howell*, 633 F.3d at 573. To allege a breach of fiduciary duty in connection with a prohibited transaction, plaintiffs must allege that defendants are fiduciaries who caused a plan to engage in a transaction that they knew or should have known was a transfer of plan assets to or for the benefit of a party in interest that

---

[7] Although the Complaint recites ERISA's duty of loyalty language, and at various points defendants are accused of failing "to act in the exclusive interest of participants," *see, e.g.*, Am. Compl. ¶ 250, none of the counts actually alleges a breach of the duty of loyalty.

did not fall into one of the statute's exemptions. 29 U.S.C. § 1106; *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005).

Here, plaintiffs allege that defendants are fiduciaries, and not much more. They fail to allege facts supporting each element of each claim. Plaintiffs attempt to state claims of fiduciary breach for "locking" the Plans into TIAA-CREF investment offerings and recordkeeping (Counts I and II), retaining both TIAA-CREF and Fidelity as recordkeepers (Counts III and IV), including too many investment offerings, resulting in allegedly excessive fees (Counts V and VI), and failing to monitor other fiduciaries (Count VII). But plaintiffs lack sufficient facts to establish the requisite elements of any of these claims.

Under Seventh Circuit law, claims like plaintiffs' are subject to dismissal. In *Hecker v. Deere & Co.*, the Seventh Circuit affirmed the dismissal of similar breach of fiduciary duty claims, based on principles that apply to all ERISA-governed retirement plans. 556 F.3d 575, 586–87 (7th Cir. 2009). The *Hecker* plaintiffs alleged that defendants breached their fiduciary duties by selecting investment options with excessive fees in their 401(k) plans. Those plans offered twenty-six investment options and a brokerage window, which gave participants access to 2,500 additional funds. *Id.* Participants could choose from this large mix of investments, which offered a wide range of fees. *Id.* In affirming the dismissal of the complaint, the Seventh Circuit held that the "[p]lans offered a sufficient mix of investments for their participants." *Id.* Thus, the fiduciaries were not liable "[i]f particular participants lost money or did not earn as much as they would have liked, [because] that disappointing outcome was attributable to their individual choices." *Id.* at 590. The Court also rejected the plaintiffs' argument that it was imprudent for the fiduciary to allow an asset-based revenue-sharing fee arrangement, as opposed to a per-participant flat-fee arrangement. *Id.* at 585; *see also Rosen v. Prudential Ret. Ins. &*

*Annuity Co.*, No. 15-cv-1839, 2016 WL 7494320, at *10 (D. Conn. Dec. 30, 2016) (collecting cases). The same analysis applies to plaintiffs' claims, and they should receive the same treatment: dismissal.

### A. Plaintiffs Fail To Adequately Plead Fiduciary Status (Counts I–VII).

"In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [a defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see Howell*, 633 F.3d at 562 ("If a particular defendant is not a fiduciary, then nothing more need be said."). Plaintiffs must allege facts sufficient to support an inference that defendants were fiduciaries *at the time of the alleged breach* because ERISA § 409(b) precludes liability for any alleged fiduciary breaches committed before or after they were fiduciaries. 29 U.S.C. § 1109(b); *see Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) (Pallmeyer, J.).

Plaintiffs' allegations fall well short of the mark. Plaintiffs allege that most of the individual defendants are fiduciaries by virtue of their participation in NURIC, which was not formed until 2012. Am. Compl. ¶¶ 31–33. They allege that Mr. Chinniah is a fiduciary by virtue of his position as Executive Vice President, which he did not have until 2014, and that Mr. Sunshine is a fiduciary because he held the same position before Mr. Chinniah. *Id.* ¶¶ 29–30. They allege that Northwestern is a fiduciary based on the 2009 versions of the Plans' governing documents, but that it delegated the fiduciary duties attendant to plan administration and investment management as permitted by ERISA. *Id.* ¶¶ 25, 31–33. In other words, plaintiffs acknowledge that different defendants were fiduciaries responsible for different matters at different points during the alleged class period (2010 to present).

Comparing these allegations to defendants' fiduciary breach allegations demonstrates that plaintiffs have failed to identify which defendants are accused of which breaches. Plaintiffs fail to identify any specific conduct that was a purported breach, much less when that conduct allegedly occurred. They allege only that the Plans' relationship with TIAA-CREF began "many years prior" to 2010, *id.* ¶ 186, a time period not addressed at all by their allegations of fiduciary status. Accordingly, because plaintiffs fail to plead that any defendant was a fiduciary for purposes of any particular challenged conduct, the Complaint should be dismissed.

Plaintiffs' failure to plead fiduciary status also undermines their attempt to allege co-fiduciary liability through knowing participation in other defendants' alleged breaches in Counts I, III, and V. To state that claim, plaintiffs must allege that one fiduciary's failure to follow its fiduciary duties enabled another fiduciary to commit a breach, and that the first fiduciary had knowledge of the breach, but took no reasonable steps to remedy it.[8] *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-cv-8324, 2004 WL 407007, at *8 (N.D. Ill. Mar. 3, 2004) (Darrah, J.).

Plaintiffs' knowing participation claims are merely tacked onto their breach of fiduciary duty claims, with no additional facts to support them. *See* Am. Compl. ¶¶ 239, 254, 273. Plaintiffs do not allege any facts about what knowledge any particular fiduciary possessed regarding any other fiduciary's alleged breaches of fiduciary duty, or what steps should have been taken to remedy them. Plaintiffs allege only that defendants were fiduciaries and that breaches occurred. In so doing, they omit essential elements of their co-fiduciary claims, which therefore should be dismissed. *Sears*, 2004 WL 407007, at *8.

---

[8] Plaintiffs' co-fiduciary claims also fail for the additional reason that, as explained below, they fail to allege any underlying breach. *See Rosen*, 2016 WL 7494320, at *11 ("Without an underlying breach of fiduciary duty or breach of trust on the part of a Plan fiduciary, [the fiduciary] cannot be held liable for a knowing participation in a breach of trust.").

### B. Plaintiffs Fail To State A Claim Based On Locking In TIAA-CREF Funds (Counts I And II).

In Counts I and II, plaintiffs allege that defendants breached the duty of prudence and caused the Plans to engage in prohibited transactions by "allowing TIAA-CREF to mandate the inclusion of the CREF Stock Account and Money Market Account in the Plans, as well as the TIAA Traditional Annuity, and to require that it provide recordkeeping for its proprietary options." Am. Compl. ¶ 235.

To state a claim for breach of the fiduciary duty of prudence, plaintiffs must allege that defendants' conduct in arriving at the challenged fiduciary decision was deficient, *Unisys*, 74 F.3d at 434–35, and that they were harmed by the deficiency, *Brosted*, 421 F.3d at 465. Because plaintiffs allege that defendants breached their duties by failing to eliminate imprudent investment options, they must also plead a plausible alternative course of action that would have been less harmful to the Plans than continuing to offer the investment. *See Dudenhoeffer*, 134 S. Ct. at 2472. To state a claim for breach of fiduciary duty through a transaction prohibited by ERISA § 406(a)(1)(D), plaintiffs must allege facts supporting an inference that defendants subjectively intended to benefit the purported party-in-interest. *See Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 861 (6th Cir. 1999) (requiring subjective intent to benefit a party in interest); *Reich v. Compton*, 57 F.3d 270, 279 (3d Cir. 1995) (same). They must also allege facts showing that the alleged prohibited transaction involved a party-in-interest, *Keach*, 419 F.3d at 635; a mutual fund does not qualify, as it is expressly exempt from the party-in-interest definition. 29 U.S.C. § 1002(21)(B) (investment in mutual fund "shall not by itself cause" mutual fund "to be deemed . . . a party in interest"). A bare allegation that prohibited transactions occurred every time fees were paid is insufficient as well. *Hecker*, 556 F.3d at 584.

10

Plaintiffs' allegations do not satisfy any of these requirements. First, plaintiffs make a conclusory assertion about the initial decision to engage TIAA-CREF; they allege that defendants failed to "engage in a cost-benefit analysis to determine whether it is prudent and in the exclusive best interest of participants to lock their plans into an arrangement that precludes the removal of imprudent plan investments and results in excessive plan fees." Am. Compl. ¶ 89. But plaintiffs do not allege a single fact to support that inference—and certainly do not identify any alleged failing in defendants' fiduciary process, which is required to support an inference of imprudence. *Unisys*, 74 F.3d at 434.

Second, plaintiffs' assertion that defendants should have removed the TIAA-CREF investment options (at some unspecified point) also does not support such an inference. Section 403(b) plans were originally limited to only annuity contracts. The Plans offered those annuities through TIAA-CREF, and the Plans' participants used those offerings heavily. Am. Compl. ¶ 122. By 2009, the TIAA-CREF Traditional Annuity option accounted for over 25% of the Plans' holdings. Ex. G, Sch. H at 18–24; Ex. F, Sch. H at 19–25. By 2015, the TIAA Traditional Annuity accounted for $581,465,282 of the Plans' investments. Ex. G, Sch. H at 18; Ex. F, Sch. H at 18. Terminating the TIAA-CREF relationship would subject those participant investments to massive penalties. Am. Compl. ¶¶ 117, 132. Maintaining the TIAA-CREF relationship avoids those penalties.

In light of this obvious benefit to maintaining the TIAA-CREF relationship, plaintiffs' bare allegations that lower-priced or better-performing options were available is not sufficient to support an inference that a prudent fiduciary would have removed the TIAA-CREF funds from the Plans. Plaintiffs have not explained how the Plans could have removed the TIAA-CREF offerings without suffering significant harm. *See Amgen Inc. v. Harris*, 136 S. Ct. 758, 760

11

(2016) (requiring courts to consider "whether the complaint in its current form has plausibly alleged that a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good" (internal marks and citations omitted)); *Hecker*, 556 F.3d at 578; *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). There is nothing imprudent about avoiding a 2.5% penalty on 25% of the Plans' assets. Moreover, plaintiffs plead that in 2016, when defendants overhauled the Plans' fund line-up and eliminated numerous options, they maintained the TIAA-CREF relationship. Am. Compl. ¶ 226. This suggests not that defendants had a deficient fiduciary process, but that they considered the Plans' investment offerings and decided it was better to retain the funds.

Third, plaintiffs' prohibited transaction allegations (Count II) fail to state a claim for breach of fiduciary duty because plaintiffs have not pled that a prohibited transaction occurred, or that any defendant knowingly caused the Plans to engage in one. ERISA expressly exempts arrangements for providing plan administrative services from its prohibited transaction rules. 29 U.S.C. § 1108(b)(2) (exempting "reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor"). Recordkeeping services are necessary for the operation of the Plans, and as discussed *infra* in Part I.C., plaintiffs allege no facts supporting an inference that the compensation paid for recordkeeping services was unreasonable. Nor do plaintiffs allege even in general terms that defendants subjectively intended to benefit TIAA-CREF at the Plans' expense.[9] All of these are essential elements of a breach of fiduciary duty claim based on a prohibited transaction. *Reich*, 57 F.3d at 278.

---

[9] Plaintiffs allege repeatedly that defendants' decisions benefitted the Plans' service providers' interests. Although these allegations read like allegations that defendants breached their duties of loyalty, they are not. Plaintiffs do not allege that defendants intended to benefit the service providers, or even that they had any reason to want to do so. *White*, 2016 WL 4502808, at *5.

Accordingly, Counts I and II should be dismissed.

### C.     Plaintiffs Fail To State A Claim Based On Allegedly Excessive Recordkeeping Fees (Counts III And IV).

Plaintiffs' claims based on their allegation that the Plans paid excessive fees because they use two recordkeepers fail.  To state a claim for breach of the duty of prudence through allegedly excessive fees, plaintiffs must allege some failure to follow a prudent process, which led to excessive fees.  *See Brock v. Robbins*, 830 F.2d 640, 647–48 (7th Cir. 1987) (distinguishing between the prudence of a fiduciary's process in agreeing to a fee and the reasonableness of the fee itself).  The standard for determining prudence does not analyze results; rather, it examines whether the fiduciary's *process* and method of arriving at the challenged decision was imprudent.  *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7–8 (1st Cir. 2009).  Applying this principle, courts have rejected complaints challenging recordkeeping fees that fail to plead facts showing that prudent fiduciaries following a prudent process would have acted to obtain available, lower fees.  *See, e.g.*, *White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) (dismissing claims where plaintiffs failed to plead same services available for less); *Loomis v. Exelon Corp.*, No. 06-cv-49, 2009 WL 4667092, at *4 (N.D. Ill. Dec. 9, 2009) (Darrah, J.) (applying *Hecker's* reasoning to dismiss challenge to recordkeeping fees).

Similarly, courts have rejected variations on the theme that lower fees or different fee structures were available; such allegations do not, on their own, support an inference of a deficient fiduciary process.  For example, the Seventh Circuit has consistently rejected the argument that the use of asset-based fee arrangements supports an inference of fiduciary breach. *Hecker*, 556 F.3d at 585; *see also Loomis*, 2009 WL 4667092, at *5 ("[A]sset-based fee schedules are permissible under *Hecker*."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 672–73 (7th

13

Cir. 2011) (recognizing that "flat payments per participant may help some participants but hurt others"); *accord White*, 2016 WL 4502808, at *14 (holding that the use of asset-based fees "is a 'common' and 'acceptable' investment industry practice that 'frequently inure[s] to the benefit of ERISA plans'" (citations omitted)).  Likewise, an allegation that no competitive bidding occurred is inadequate to support an inference that bidding would have resulted in lower fees because "nothing in ERISA compels periodic competitive bidding."  *White*, 2016 WL 4502808, at *14 ("[T]he allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation.").  Nor should a fiduciary's later prudent acts be used as evidence that prior acts were imprudent.  "[T]o embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence" would discourage future changes that could benefit participants.  *Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*, No. 11-cv-5127, 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012), *aff'd*, 513 F. App'x 78 (2d Cir. 2013); *White*, 2016 WL 4502808, at *14.

To support a breach of fiduciary duty claim through prohibited transactions under ERISA § 406(a)(1), plaintiffs must show that a fiduciary caused or allowed the Plans to engage in the prohibited transaction.  However, ERISA expressly allows a fiduciary to use plan assets to pay a party in interest "reasonable compensation" for "services necessary for the . . . operation of the plan."  29 U.S.C. § 1108(b)(2).  Payment for services may be prohibited "only if, at the time they entered the . . . agreement," defendants knew or should have known that the compensation would be unreasonable.  *Kouba v. Joyce*, No. 83-cv-451, 1987 WL 33370, at *6 (N.D. Ill. Dec. 31, 1987) (Nordberg, J.).  What is "reasonable compensation" depends on the circumstances "existing at the date when the contract for services was made, not those existing at the date when the contract is questioned."  *Id*. (quoting 26 C.F.R. § 1.162-7(b)(3)).

Plaintiffs have not pled the elements of any fiduciary breach claim related to excessive recordkeeping expenses. First, plaintiffs fail to plead the elements of a breach of the duty of prudence. Plaintiffs rest on conclusory allegations that defendants failed to fulfill their duties without identifying any fiduciary decision made by any defendant through any deficient process. *See, e.g.*, Am. Compl. ¶ 154 ("Defendants failed to prudently monitor and control the compensation paid for recordkeeping and administrative services."); *see also id.* ¶¶ 249, 251. The thrust of plaintiffs' Complaint is the same as their original complaint: that defendants breached their duties by agreeing to a revenue-sharing fee arrangement, resulting in excessive fees. *See* Am. Compl. ¶ 249. Plaintiffs admit that the use of a revenue-sharing fee arrangement is insufficient to support an inference of a fiduciary breach. Am. Compl. ¶ 65. But they do not plead any facts beyond a revenue-sharing arrangement. This sort of conclusory pleading of the elements is precisely the type of pleading that fails under *Twombly* and *Iqbal*. As in *Hecker*, "no breach of a fiduciary duty on [defendants'] part has been described." 556 F.3d at 587.

The use of two recordkeepers also does not indicate a deficient fiduciary process. The materials cited in the Complaint conclude that having two recordkeepers can be a logical choice for § 403(b) plans.[10] Other university plans use even more recordkeepers. *See, e.g.*, *Kelly v. Johns Hopkins Univ.*, No.16-cv-2835, ECF No. 1, ¶ 22 (D. Md. Aug. 11, 2016) (alleging use of five recordkeepers); *Clark v. Duke Univ.*, No. 16-cv-1044, ECF No. 1, ¶ 51 (M.D.N.C. Aug. 10,

---

[10] *See, e.g.*, The Standard Retirement Services, Inc., Fixing Your 403(b) Plan: Adopting a Best Practices Approach, at 1 (Nov. 2009) (observing that "[t]he most prevalent model by far . . . in many 501(c)(3) organizations, is the multi-recordkeeper platform" and that it is "not uncommon" for a plan to have "10, 20, or even 50-plus insurance and mutual-fund companies as recordkeepers") (cited at Am. Compl. ¶ 104, 173 and attached as Ex. M); Aon Hewitt, *How 403(b) Plans Are Wasting Nearly $10 Billion Annually*, at 7 (noting that, due to the unique reliance of § 403(b) plans on offering annuities, it may be impossible to consolidate to a single recordkeeper) (cited at Am. Compl. ¶ 105 and attached as Ex. L); Plan Sponsor, Vendor Consolidation in Higher Education: Getting More from Less, at 2 (July 29, 2010) (recommending "consolidation to one or *two* vendors"—the number plaintiffs allege the Plans use (emphasis added)) (cited at Am. Compl. ¶ 108 and attached as Ex. N).

2016) (alleging use of four recordkeepers); *Cassell v. Vanderbilt Univ.*, No. 16-cv-2086, ECF No. 1, ¶ 56 (M.D. Tenn. Aug. 10, 2016) (alleging use of four recordkeepers). Thus, plaintiffs have failed to allege a fiduciary breach.

Second, plaintiffs have failed to adequately plead facts that support an inference that the Plans suffered harm by paying excessive recordkeeping fees.[11] They allege that the Retirement Plan paid $153 to $213 per participant per year from 2010 to 2015, that the Voluntary Plan paid $54 to $87, and that a reasonable fee would be a flat $35 per participant. Am. Compl. ¶ 148. They assert that defendants should have solicited bids and hired a single recordkeeper at this price. *Id.* ¶ 151.

But plaintiffs do not identify any recordkeeping company that would accept a $35 rate to perform the same services that the Plans received from their two recordkeepers, or allege that one recordkeeper would or could perform those services (support both the complex annuity contracts offered by TIAA-CREF and the mutual fund options available through Fidelity) at any price. None of the cited articles state that recordkeeping services are available to any § 403(b) plan for $35 per participant, much less that these services were available at that rate when the contracts were entered into. Moreover, the Plans' alleged fees are lower than those paid by other similar university plans. *See, e.g.*, *Vellali v. Yale Univ.*, No. 16-cv-1345, ECF No. 1, ¶ 60 (D. Conn. Aug. 9, 2016) (alleging fees between $200-$300 per participant per year from 2010 to 2014); *Clark*, No. 16-cv-1044, ECF No. 1, ¶ 59 (alleging fees of $280 per participant per year from 2010 to 2014). By comparison, the Plans' alleged recordkeeping fees of $54 to $213 per participant are modest.

---

[11] Plaintiffs also allege that defendants successfully negotiated a revenue credit from the Plans' recordkeepers; they then allege, without any factual support, that the amounts of those credits were too low, reflecting poor negotiating by defendants. *See* Am. Compl. ¶¶ 152, 216–19. This conclusory allegation is unsupported and should be disregarded. *Iqbal*, 556 U.S. at 678.

Count IV should also be dismissed because plaintiffs have failed to allege that defendants caused or allowed the Plans to engage in a prohibited transaction through excessive recordkeeping fees. ERISA does not prohibit plans from paying service fees, and, as discussed above, plaintiffs' factual allegations do not support an inference that the recordkeeping fees paid by the Plans were excessive, much less that defendants knew that they were and intended to benefit the recordkeepers. *See Hecker*, 556 F.3d at 586-587; *Loomis*, 658 F.3d at 670. Thus, plaintiffs' prohibited transaction claim fails as well.

Accordingly, Counts III and IV should be dismissed.

**D.     Plaintiffs Fail To State A Claim Based On Allegedly Excessive Investment Management Fees (Counts V And VI).**

In Counts V and VI of the Complaint, plaintiffs contend that defendants breached their fiduciary duty of prudence by allowing the Plans to offer too many investment options with a range of expense ratios that was too high, resulting in prohibited transactions. To state a claim for a breach of the duty of prudence, plaintiffs must allege that fiduciaries breached their duties by employing an imprudent decisionmaking process, causing plaintiffs harm. *Unisys*, 74 F.3d at 434. To state a fiduciary breach claim based on prohibited transactions, plaintiffs must allege that defendants knowingly caused the Plans to engage in them. 29 U.S.C. § 1106.

Because their claim is based on allegedly excessive investment management fees, plaintiffs must allege more than just the availability of lower fees. "[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. In *Hecker*, the Seventh Circuit established that plans may offer a wide range of investment options and fees without breaching any fiduciary duty. *Id.* at 586–87. Participant choice is a cornerstone of ERISA defined-contribution plans, and paying more to obtain more choice does not support an inference

of fiduciary breach. *Loomis*, 658 F.3d at 673 (ERISA "encourages sponsors to allow more choice to participants in defined-contribution plans."). Thus, a fiduciary who "has left choice to the people who have the most interest in the outcome . . . cannot be faulted for doing [so]." *Id.* at 673–74. Offering a large number of investment options gives participants the power to control their investments in a meaningful way. *See Hecker*, 556 F.3d at 586 (no breach of fiduciary duty where 401(k) plan participants could choose to invest in 26 investment options and more than 2,500 mutual funds through a brokerage window); *Loomis*, 658 F.3d at 669 (no breach of fiduciary duty where 401(k) plan offered 32 investment options); *accord Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (no breach of fiduciary duty where 401(k) plan offered 73 investment options).

Having many investment options is an even more important way to provide participants with meaningful choice in § 403(b) plans than in § 401(k) plans like those at issue in *Hecker*. As described above, § 403(b) plan fiduciaries are required to offer individual annuity contracts, which have relatively high fees, and cannot offer employer stock and other lower-cost options that are available in 401(k) plans. Providing a wide array of options is thus essential to providing participant choice, which *Hecker* and *Loomis* recognize as a valid fiduciary goal.

The Seventh Circuit has also made clear that a bare allegation that a plan offered retail-class funds is insufficient to state a claim for a breach of the duty of prudence. *See Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 672. Retail-class funds have benefits that institutional funds do not, such as being "set against the backdrop of market competition," *Hecker*, 556 F.3d at 586, and higher liquidity, *Loomis*, 658 F.3d at 672. Similarly, "investment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006).

18

Likewise, a fiduciary's "decision to change funds [does] not sustain allegations that [any fund] was an imprudent choice previously." *Laboy*, 2012 WL 3191961, at *3.

Plaintiffs allege only that defendants allowed the Plans to offer too many options. They allege that the Retirement Plan and the Voluntary Plan offered 242 and 187 investment options, respectively, that "included mutual funds, insurance pooled separate accounts, and insurance company fixed and variable annuity products." Am. Compl. ¶ 110. They then conclude that, because participants could choose to invest in higher-fee options, the Plans' overall fees are excessive.

The facts plaintiffs allege do not support this claim. The expense ratios for the Plans' investment options ranged between 0.05% and 1.89%. Am. Compl. ¶¶ 161, 54 n.5. This range falls squarely within other ranges that have been deemed reasonable as a matter of law. *See e.g.*, *White*, 2016 WL 4502808, at *11 (expense ratios between .05% and 1.24%); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015) (expense ratios between .03% and 2%); *Loomis*, 658 F.3d at 669 (expense ratios between .03% and .96%); *Renfro*, 671 F.3d at 319 (expense ratios between .1% and 1.21%); *Hecker*, 556 F.3d at 586 (expense ratio between .07% and "just over 1%"). Given the range of expense ratios, any participant who preferred a fund with low expenses could choose one through the Plans. Thus, as in *Hecker*, "the undisputed facts leave no room for doubt that the [Plans] offered a sufficient mix of investments for their participants" to choose from. *Hecker*, 556 F.3d at 586–87. "Unless *Hecker* is to be overruled, our plaintiffs cannot prevail." *Loomis*, 658 F.3d at 670.

Plaintiffs' criticism of the performance of the CREF Stock Account and the TIAA Real Estate Account does not save their claim. Am. Compl. ¶¶ 268–69. As explained *supra* in Part II.B, defendants could not remove these options without incurring penalties for the Plans.

19

Similarly, the 2016 changes to the Plans' investment options are not evidence of a breach; they indicate that defendants were monitoring regulatory changes and industry best practices, and adapting the Plans accordingly. Plaintiffs also fail to plead harm because they never allege that participants who selected higher-cost options (whether in the form of retail share classes, annuity products, or actively managed funds) did not benefit from the additional features those options provide. *E.g.*, *Loomis*, 658 F.3d at 671–72 (describing the benefits of retail share classes).

Count VI also fails for the additional reason that plaintiffs do not allege any facts to support an inference that defendants knowingly caused the Plans to engage in prohibited transactions. Plaintiffs allege in purely conclusory fashion that the mere inclusion of TIAA-CREF and Fidelity investment options was a prohibited transaction. Am. Compl. ¶ 276. But the Complaint does not explain at all how offering these options constitutes a prohibited transaction. Nor are there any allegations that explain how any particular fiduciary caused or allowed the alleged prohibited transactions in breach of his or her fiduciary duties. Such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).

Accordingly, Counts V and VI should be dismissed.

**E.      Plaintiffs Fail To State A Claim For Failure To Monitor (Count VII).**

Plaintiffs have not adequately pled a breach of the duty to monitor (Count VII). Am. Compl. ¶¶ 279–86. To state a claim for failure to monitor, plaintiffs must allege facts demonstrating that these defendants failed in their monitoring *process*. *Neil*, 677 F. Supp. 2d at 1023–24 (allegations "only in the most general terms that the [alleged monitoring fiduciaries] breached their duty to monitor" "fail *Twombly*'s plausibility requirement").

The duty to monitor is a limited one, satisfied by selecting appropriate people to appoint and seeing that those appointees perform their delegated fiduciary duty. 29 C.F.R. § 2509.75-8;

*In re Calpine Corp. ERISA Litig.*, No. 03-cv-1685, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005); *see also In re Xcel Energy, Inc., Sec., Derivatives, & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1176 (D. Minn. 2004) ("The scope of the duty to monitor appointees is relatively narrow.").  Once an appointed fiduciary is in place, the appointing fiduciaries "cannot be held liable for any act or omission of [the fiduciary] so far as the assets entrusted to [the fiduciary] are concerned."[12]  *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987).  A monitoring fiduciary is "not required to monitor the prudence of the individual investments offered under the Plan."  *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009) (Pallmeyer, J.).  Thus, to state a claim, plaintiffs must allege "***facts*** showing how the monitoring ***process*** was deficient," *White*, 2016 WL 4502808, at *19 (emphasis added), and that the deficiency resulted in some underlying breach, *Brosted*, 421 F.3d at 465.

Here, plaintiffs fail to plead any facts demonstrating a deficient monitoring process.  They allege that Northwestern, Mr. Chinniah and Mr. Sunshine had the authority to appoint fiduciaries.  They allege conclusorily that these defendants should have stopped some other fiduciaries from engaging in some fiduciary breaches, but fail to provide any supporting facts whatsoever regarding how they failed to do so, or even how they should have known breaches were occurring, much less how appropriate monitoring might have stopped them.  Moreover, as discussed above, plaintiffs also fail to allege any underlying breach.  Like the vague duty to monitor allegations in *White*, plaintiffs' ephemeral monitoring claim (Count VII) is doomed.

Accordingly, Count VII should be dismissed.

---

[12] To require a greater level of review would defeat the purpose of delegating responsibility.  *Howell*, 633 F.3d at 572–73.

## II.    Plaintiffs' Claims Are Time Barred.

To be timely, claims for breach of ERISA fiduciary duties must be brought within three years of plaintiffs' actual knowledge of the alleged breach.  29 U.S.C. § 1113.  Plaintiffs have actual knowledge when they know "the essential facts of the transaction or conduct constituting the violation," and "it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality."  *Rush v. Martin Petersen Co., Inc.*, 83 F.3d 894, 896 (7th Cir. 1996) (internal quotation marks and citations omitted).  Plaintiffs' knowledge should be considered in the context of the "complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation."  *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992).

Dismissal of plaintiffs' claims is appropriate when all of the information that forms the basis of the complaint was disclosed to participants more than three years before the claims are brought.  *See Young v. GM Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009) (dismissing a claim as time barred because "[t]he allegedly excessive fees that form the central basis of [the] claim were readily apparent from the information provided to all Plan participants more than three years before Plaintiffs filed this suit"); *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (holding plaintiffs charged with actual knowledge of information in plan documents).

Here, the essential facts that form the basis of plaintiffs' Complaint are the investment options available through the Plans, the recordkeepers used by the Plans, and the fees associated with the Plans.  Department of Labor regulations have required that participants receive detailed disclosures of these facts since 2012.  29 C.F.R. § 2550.404a–5 (effective date Dec. 20, 2010).  And all of the essential facts—the Plans' service providers, investment options, and total associated fees—have been subject to mandatory disclosure for much longer.  *See* Annual

Reporting and Disclosure, 72 Fed. Reg. 64710 (Nov. 16, 2007) (describing enhanced fee and expense disclosures to be effective January 15, 2008, under 29 C.F.R. § 2520). Plaintiffs do not allege that defendants ever failed to make these mandatory disclosures, and a review of the Plans' governing documents and required disclosures to participants demonstrates that they did.[13] *See* Summary Plan Description ("SPD," attached as Ex. C) at 28–32; 2016 Investment Menu Redesign Guide (attached as Ex. D). Accordingly, plaintiffs' claims, which are not based on any information other than the information already available to plaintiffs as of their August 17, 2016 original complaint, remain untimely.

In addition, plaintiffs' claims based on defendants' allegedly "locking in" the Plans to certain recordkeeping arrangements and investment options are untimely because they are past the six-year statute of repose for breach of fiduciary duty claims. 29 U.S.C. § 1113(1)(A). Those claims allege that TIAA-CREF was allowed to "lock in" the inclusion of certain investment options and its use for recordkeeping services, and that once that arrangement was in place, it could not be changed. Am. Compl. ¶¶ 235, 243. Plaintiffs allege this relationship has been in place for more than six years, *id.* ¶ 186, and the complained-of investment options have been available to participants for just as long (and they have been at all times since then). *Id.* ¶ 175. The events that plaintiffs allege are the bases for Counts I and II occurred more than six years ago, and therefore, plaintiffs' claims in Counts I and II are barred.[14]

---

[13] The Plans disclose the gross expense ratio for each investment option, which includes all of the different kinds of expenses that plaintiffs attack. *See, e.g.*, Am. Compl. ¶¶ 135, 137 (cataloging fees associated with investment options); Northwestern 403(b) Retirement Plans Investment Options Guide (attached as Ex. E).

[14] The fact that plaintiffs' prohibited transaction claim in Count II is based on alleged transactions that "occurred each time the Plans paid fees to TIAA-CREF," Am. Compl. ¶ 243, does not change this result. *See Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2009 WL 839099, at *6 (S.D. Ill. Mar. 31, 2009) (explaining "there is no 'continuing violation' theory to claims subject to ERISA's limitation period") (citation omitted).

**III.     Plaintiffs' Claims Are Barred By ERISA's Safe Harbor Provision.**

The Complaint should be dismissed for the additional, independent reason that by

alleging sufficient participant choice, plaintiffs' allegations demonstrate that ERISA's safe

harbor provision, 29 U.S.C. § 1104(c), bars plaintiffs' claims.  ERISA's safe harbor provision

precludes fiduciary liability for investment losses where the fiduciary "satisfies the criteria of

§ 1104(c) and includes a sufficient range of options so that the participants have control over the

risk of loss." *Hecker*, 556 F.3d at 589.  Here, plaintiffs have pled all four of the elements

necessary to show that the criteria of § 1104(c) have been satisfied.  They also have failed to

plead any injury exempted from the provision, because the fees paid by the Plans were dictated

not by the fee arrangements allegedly negotiated by defendants, but by the Plans' participants'

choices of investment options.

First, the Plans' participants "have the right to exercise independent control over the

assets in [their] account[s] and in fact exercise such control." *Hecker*, 556 F.3d at 587.  All of

plaintiffs' claims stem from their central allegation that the Plans allowed participants to exercise

complete control over their investments. *See generally* Am. Compl.; Ex. C.  Second, participants

are able to choose "from a broad range of investment alternatives," 29 C.F.R. § 2550.404c–

1(b)(1)(ii); Am. Compl. ¶ 110; Ex. C at 24–27.  Third, as set forth in detail in the chart that is

Exhibit I, the Plans satisfy the nine criteria required for their participants to be considered to

have "sufficient information to make informed decisions with regard to investment alternatives

available under the plan." *Hecker*, 556 F.3d at 587 (quoting § 2550.404c–1(b)(2)(i)(B)).  Fourth,

the Plans "furnish extensive information on the operating expenses of the investment

alternatives, copies of relevant financial information, and other similar materials." *Hecker*, 556

F.3d at 587; § 2550.404c–1(b)(2)(i)(B)(2).  They also inform participants of expenses incurred,

satisfy the required frequency of investment instructions, and disclose all "material non-public

24

facts regarding the investment." *Hecker*, 556 F.3d at 587; § 2550.404c1(c)(2)(ii); *see* Ex. C at 27 (directing participants to publicly available fund prospectuses). "Given the numerous investment options, varied in type and fee," the safe harbor provision applies here, and protects defendants from being "held responsible for [a participant's investment] choices." *Hecker*, 556 F.3d at 590. The Complaint should therefore be dismissed for this additional, independent reason.

## CONCLUSION

For all the foregoing reasons, plaintiffs' Complaint should be dismissed in its entirety.

Dated: January 17, 2017                                Respectfully submitted,


By:   */s/ Craig C. Martin*
 Craig C. Martin
 Amanda S. Amert
 Casey T. Grabenstein
 Monica M. Perdomo
 JENNER & BLOCK LLP
 353 N. Clark Street
 Chicago, IL 60654-3456
 Phone:  (312) 222 9350

 *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on January 17, 2017, a true and correct copy of **Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: January 17, 2017                                Respectfully submitted,


By:  _/s/ Craig C. Martin_
      Craig C. Martin
      Amanda S. Amert
      Casey T. Grabenstein
      Monica M. Perdomo
      JENNER & BLOCK LLP
      353 N. Clark Street
      Chicago, IL 60654-3456
      Phone:  (312) 222 9350

      *Attorneys for Defendants*