IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Laura L. Divane, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Northwestern University, et al. <br><br> Defendants. | CASE NO. 16-CV-8157 <br> JUDGE JORGE L. ALONSO <br><br> MAGISTRATE JUDGE <br> MICHAEL T. MASON |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Plaintiffs' eleventh-hour motion to amend their complaint should be rejected. Injecting new theories into this case now—after the already-extended deadline for completing discovery— will inflict considerable additional expense and effort on defendants and on this Court. Plaintiffs' proffered justification that they only just learned of these claims is demonstrably false. Moreover, these new claims are futile because they could not withstand a motion to dismiss. Thus, plaintiffs' motion for leave to amend again should be denied.

**BACKGROUND**

Plaintiffs filed their original complaint on August 17, 2016 (Dkt. 1), and their first amended complaint on December 15, 2016 (Dkt. 38). Plaintiffs' current complaint asserts seven counts for breach of fiduciary duty and prohibited transactions under ERISA.[1] Defendants

---

[1] The current amended complaint asserts that defendants (1) breached their fiduciary duties by allegedly "locking" Northwestern's 403(b) retirement plans (the "Plans") into using TIAA-CREF as a recordkeeper and offering the CREF Stock Account as an investment option (Count I), failing to prevent Plan participants from paying excessive fees (Counts III and V), and failing to prevent investment losses (Count V); (2) engaged in prohibited transactions through their arrangements with the Plans' service providers (Counts II and IV) and in connection with fees charged by funds in the Plans (Count VI); and (3) failed to appropriately monitor other Plan fiduciaries (Count VII).

moved to dismiss the current amended complaint on January 17, 2017. (Dkt. 58.) Defendants' motion to dismiss the amended complaint is currently pending, and the Court granted defendants' motion to strike plaintiffs' jury demand on April 25, 2018. (Dkt. 138).

On March 9, 2017, the Court set a fact discovery deadline of March 9, 2018. (Dkt. 72.) On March 10, 2017, plaintiffs served their discovery requests, and defendants responded on April 10, 2017, and made a sizeable initial production on April 24, 2017. (Declaration of Casey T. Grabenstein ("Grabenstein Decl."), ¶¶ 2 & 4.) The parties engaged in a lengthy, cooperative discovery process, collaborating on a technology assisted review and relying on vendors to help review and produce tens of thousands of responsive documents. (*Id.* ¶ 5.) Defendants substantially completed their document production by December 15, 2017, and have now produced nearly 100,000 documents, and more than 450,000 pages of discovery. (*Id.* ¶¶ 7 & 8.) Five third parties also have produced documents in response to subpoenas. (*Id.* ¶ 9.)

The current April 30, 2018, deadline for completing fact discovery is the result of the parties' agreed January 2, 2018, motion. (Dkt. 110). Defendants worked diligently, and at great expense and inconvenience, to meet this deadline. Defendants deposed four named plaintiffs in February 2018. (Grabenstein Decl. ¶¶ 12 & 13.) On March 22, 2018, plaintiffs began deposing defendants and third parties. (*Id.* ¶ 15.)[2] Plaintiffs have completed twelve depositions to date. (*Id.* ¶¶ 15–26.) The parties agreed to a limited extension of the discovery deadline to allow plaintiffs to complete two additional depositions, and to allow certain third parties to complete document productions. (Dkt. 135.)

On April 24, 2018—six days before the fact discovery deadline—plaintiffs filed the

---

[2] Defendants were available for depositions as early as March 2, 2018. (Grabenstein Decl. ¶ 14.)

2

instant motion seeking leave to file a proposed second amended complaint ("PSAC"). (Dkt. 129–131.) Plaintiffs seek to add four counts alleging that defendants breached their fiduciary duties by (1) including retail share class investment options in the Plans (PSAC Count VII), (2) allegedly violating the Investment Policy Statement ("IPS") by offering certain investment products and failing to monitor service providers and investment fees and performance (PSAC Count VIII), and (3) failing to prevent TIAA-CREF from marketing to plan participants (PSAC Count IX), which (4) plaintiffs allege also constitutes a prohibited transaction (PSAC Count X).[3] On April 25, 2018, plaintiffs moved to extend the discovery deadline by two months to accommodate their new claims.[4] (Dkt. 139.)

## ARGUMENT

This Court has discretion to deny leave to amend pleadings pursuant to Rule 15(a). *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Continental Bank NA v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993). Denial is appropriate where "there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). At least three of these factors—undue delay, undue prejudice to the defendants, and futility of the amendment—are present here, warranting denial of plaintiffs' motion.

**I.    Plaintiffs' Proposed Claims Are Futile.**

The Court should deny plaintiffs' motion because their proposed claims are futile. "[I]t is

---

[3] Plaintiffs filed the PSAC under seal in its entirety, without filing a redacted version in the public record, because it "contains excerpts from materials that Defendants have designated as 'Confidential.'" (Dkt. 133.) Defendants' opposition brief does not quote or characterize confidential information from the PSAC.

[4] Plaintiffs' counsel mentioned neither motion in the course of the parties' negotiations regarding the limited extension of the fact discovery deadline discussed above. (Grabenstein Decl. ¶ 29.)

well settled that a district court may refuse leave to amend where amendment would be futile." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). "A new claim is futile if it would not withstand a motion to dismiss." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001).

To survive a motion to dismiss for failure to state a claim, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, plaintiffs' allegations must allow the Court to "infer more than the mere possibility of misconduct," and support a "reasonable inference that [defendants are] liable for the misconduct alleged."[5] *Iqbal*, 556 U.S. at 678–79.

To state a claim for breach of fiduciary duty under ERISA, plaintiffs must allege that defendants are fiduciaries, that they breached their fiduciary duties, and that their breach harmed plaintiffs. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). Clarity and specificity are key, because "the content of the duty of prudence turns on the circumstances" and requires a context-specific inquiry. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (internal quotation marks omitted). To allege a breach of fiduciary duty in connection with a prohibited transaction, plaintiffs must allege that defendants are fiduciaries who caused a

---

[5] Plaintiffs' "pleading burden should be commensurate with the amount of information available to them." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010)). Accordingly, the Court should look more harshly on the complaint because plaintiffs drafted it with the benefit of extensive discovery and prior motions to dismiss. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013).

plan to engage in a transaction that they knew or should have known was a transfer of plan assets to or for the benefit of a party in interest, and that falls outside of the statute's exemptions. 29 U.S.C. § 1106; *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005).

### A. Plaintiffs Fail To State A Claim In Count VII That Defendants Breached Their Fiduciary Duties By Including Retail Investment Options In The Plans.

Plaintiffs allege in Count VII of the PSAC that defendants breached their fiduciary duties by offering funds "in higher-cost share classes" in lieu of "identical, lower-cost versions of these same funds *with absolutely no difference in liquidity*." (PSAC ¶ 341 (emphasis in original).) This claim is precluded by controlling Seventh Circuit precedent.

In *Hecker v. Deere & Co.*, the Seventh Circuit first determined that including retail funds in a retirement plan is not a *per se* violation of ERISA. 556 F.3d 575, 586 (7th Cir. 2009). The Seventh Circuit noted that "all of these funds were also offered to investors in the general public, and so the expense ratios necessarily were set against the backdrop of market competition." *Id*. That "some other funds might have had even lower ratios is beside the point," because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Id.*; *accord Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823; *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2012).

In *Loomis v. Exelon Corp.*, the Seventh Circuit affirmed its holding in *Hecker*, and specifically rejected the argument that offering "retail" mutual funds instead of "institutional" vehicles is a breach of the fiduciary duty of prudence. 658 F.3d 667, 671–73 (7th Cir. 2011).[6] The Seventh Circuit observed that institutional funds necessarily offer "lower liquidity," as retail

---

[6] Certain of plaintiffs' counsel in this case were counsel of record in both *Hecker* and *Loomis*.

5

funds "allow daily transfers" while institutional funds do not. *Id*. at 672. Because increased liquidity is advantageous, "[i]t is not clear that participants would gain from lower expense ratios at the cost of lower liquidity." *Id*. Making plaintiffs' bare allegation of "identical, lower-cost" funds even less plausible, the *Loomis* court observed that the federal securities laws in fact require mutual funds to "treat alike all investors holding the same class of shares," and cannot "offer a special deal" to a plan sponsor "while giving participants the same rights as retail investors." *Id*. at 673. Plaintiffs here allege no facts to support a contrary conclusion.

The Seventh Circuit also expressly rejected plaintiffs' argument that the Plans' fiduciaries had "enormous bargaining leverage" by virtue of the size of the Plans. (PSAC ¶ 340.) The Seventh Circuit noted that the fiduciaries' leverage was in fact limited because they "could not commit that sum, or any portion of it, to any one fund without abandoning the arrangement under which the participants themselves choose where their money will be invested." 658 F.3d at 672. Similarly here, plaintiffs have not alleged any facts to support the conclusion that the mere size of the Plans enhanced defendants' bargaining position. (PSAC ¶ 340.)

Citing *Hecker* and *Loomis*, several district courts have dismissed this very claim in cases filed against other universities by plaintiffs' counsel. *Sweda v. Univ. of Pennsylvania*, No. 16-cv-4329, 2017 WL 4179752, at \*9 (E.D. Pa. Sept. 21, 2017); *Sacerdote v. New York Univ.*, No. 16-cv-6284. 2017 WL 3701482, at \*11 (S.D.N.Y. Aug. 25, 2017), *reconsideration denied*, No. 16-cv-6284, 2017 WL 4736740 (S.D.N.Y. Oct. 19, 2017). *Hecker* and *Loomis* compel the same result here, making proposed Count VII futile.

### B. Plaintiffs Fail To State A Claim In Count VIII That Defendants Breached Their Fiduciary Duties By Allegedly Violating The IPS.

Plaintiffs' proposed claim in Count VIII that defendants breached their fiduciary duties by violating the IPS is disproven by documents attached to the PSAC. "In determining the

6

sufficiency of the complaint," this Court "must rely on the exhibits whenever the allegations of the complaint are materially inconsistent with those exhibits." *Perkins v. Silverstein*, 939 F.2d 463, 469 n.4 (7th Cir. 1991); *accord Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). The actual language of the IPS, which plaintiffs attach to the PSAC as Exhibit 9, flatly refutes the central premise of plaintiffs' proposed claim, which is that defendants "violated the Plans' IPS by including and retaining the CREF Stock and TIAA Real Estate Accounts in the Plans" without benchmarking their performance. (PSAC ¶ 350.) As support, plaintiffs claim that the June 2015 IPS requires "all investments" in the Plans to "be competitive with an appropriate style-specific benchmark and the median return for an appropriate, style-specific peer group[.]" (PSAC ¶ 250.)

That mischaracterizes the IPS, which in fact provides that while investments "should *generally*" compare favorably to appropriate benchmarks, "[i]nvestments where no objective performance metric is possible due to specialty focus or . . . other unique circumstances should be reviewed using a qualitative framework." (PSAC Ex. 9, NU-00015057–NU-0015058 (emphasis added).) Plaintiffs admit that "there were no such benchmarks for the CREF Stock Account or the TIAA Real Estate Account" and that the CREF Stock Account in particular was "an incredibly unique investment vehicle, with no comparable benchmarks." (PSAC ¶¶ 256–57.) Thus, under the plain terms of the IPS, it was entirely appropriate for defendants to evaluate the funds using a "qualitative framework." (PSAC Ex. 9, NU-0015058.) Plaintiffs do not allege— nor could they—that defendants failed to do so. As a result, proposed Count VIII is futile.[7]

---

[7] Plaintiffs' allegations that defendants violated the IPS by failing to monitor plan costs and investment performance and to "[p]eriodically review the IPS" are duplicative of existing Counts III (breach of fiduciary duties based on "Unreasonable Administrative Fees") and V (breach of fiduciary duties based on "Unreasonable Investment Management Fees, Unnecessary Marketing

7

### C. Plaintiffs Fail To State Claims In Counts IX And X Related To TIAA-CREF's Purported Use Of Plan Participant Information.

Plaintiffs' proposed claims in Counts IX and X of the PSAC depend on an interpretation of "plan asset" that finds no support in the law. Plaintiffs allege that "[p]rivate, confidential information that recordkeepers obtain about plan participants is information of value belonging to the plan and its participants." (PSAC ¶ 276.) As an initial matter, plaintiffs' allegation that such information belongs to the plan's participants contradicts their assertion that it is an asset belonging to the plan. Regardless, although the Seventh Circuit has not directly addressed this issue, several circuits have adopted the Department of Labor's interpretation that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law." *In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 60 (1st Cir. 2016) (citation omitted). The DOL has explained that "[i]n general, the assets of a welfare plan would include any property. . . in which the plan has a beneficial ownership interest," taking into account "any contract or other legal instrument" and "the actions and representations of the parties involved." U.S. Dep't of Labor Advisory Op. No. 93–14A (May 5, 1993), 1993 WL 188473, at *4.

Plaintiffs do not allege, nor could they, that Plan participants conveyed a "beneficial ownership interest" in their information to the Plans. They do not, for example, allege the existence of a "contract or other legal instrument" establishing the Plans' property rights in such information, nor any "actions or representations" by Plan participants that conveyed ownership. Plaintiffs' allegation that "[t]his information is a plan asset" (PSAC ¶ 276) fails at the outset.[8]

---

and Distribution (12b-1) Fees and Mortality and Expense Risk Fees, and Performance Losses").

[8] Plaintiffs also cannot state a claim for breach of the duty of prudence based solely on TIAA's access to and use of participant information. The handling of participant data is not a fiduciary function under ERISA. *See*, *e.g.*, *Addington v. Senior Vice President-Human Res.*, No. 17-cv-444, 2017 WL 6398487, at *6 (W.D. Pa. Nov. 28, 2017) (collecting cases where privacy claims

Even if plaintiffs could plausibly allege that participant information is the "property" of the Plans, plaintiffs have not alleged essential elements of a prohibited transaction claim or a related claim for breach of fiduciary duty. To state a prohibited transaction claim under § 406(a)(1), plaintiffs must allege that a Plan fiduciary "caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888–89 (1996). Plaintiffs do not allege that any fiduciary "caused" TIAA-CREF to use participant information for marketing; rather, at most, plaintiffs allege that Northwestern failed to take action to stop TIAA-CREF from doing so. (PSAC ¶ 283.) To state a claim for breach of fiduciary duty through a transaction prohibited by ERISA § 406(a)(1)(D) (proposed Count IX), plaintiffs must allege facts supporting an inference that defendants subjectively intended to benefit the purported party-in-interest. *See Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 861 (6th Cir. 1999); *Reich v. Compton*, 57 F.3d 270, 279 (3d Cir. 1995). Plaintiffs do not allege that defendants subjectively intended to benefit TIAA-CREF, or any reason why defendants would do so. They merely allege that Northwestern "was aware" of TIAA-CREF's marketing activity and failed to stop it. (PSAC ¶ 282.) That is insufficient to state a breach of fiduciary duty claim predicated on an alleged prohibited transaction. For these reasons, Counts IX and X are futile, and the Court should not permit plaintiffs to amend their complaint to assert them.

**II.     Plaintiffs Unduly Delayed In Seeking To Add Their Proposed New Claims.**

Plaintiffs' motion also should be denied because they have unduly delayed in seeking

---

were not pre-empted by ERISA because they were "far removed from the administration of the ERISA plan"), *report and recommendation adopted sub nom. Addington v. Senior Vice President-Human Res., Consol Energy, Inc.*, No. 17-cv-444, 2017 WL 6398736 (W.D. Pa. Dec. 13, 2017); *Duran v. Cisco Sys., Inc.*, 2008 WL 4793486, at *4 (C.D. Cal. Oct. 27, 2008) (finding that "negligently allowing a third party to access plaintiff's personal information" is "only peripherally related to the administration of the [ERISA] plan").

leave to amend their complaint to add the new claims they propose. Where plaintiffs wait until fact discovery is nearly complete before seeking leave to add claims based on information that was available to them "long before [they] sought leave to amend," the request is properly denied. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

The factual bases for plaintiffs' "new" claims have long been known to them, and their decision to wait until the close of fact discovery to raise them is unjustifiable. Plaintiffs' contention that their four proposed claims are "based on facts first discovered by Plaintiffs during" depositions that began on March 22, 2018, is unsupportable. (Dkt. 131 ("Memo.") at 2–3.) In fact, all four proposed counts are based on information plaintiffs have had for many months or longer.

Proposed Count VII alleges breach of fiduciary duties by use of retail share classes in the Plans "even though the Plans qualified for the identical versions of these same funds offered in lower-cost share classes." (PSAC ¶ 340.) But plaintiffs concede that the basis for this claim was described in their amended complaint, filed on December 15, 2016. (Memo. at 2 n.2, citing Dkt. 38, ¶ 266, also described at ¶¶ 55, 56, 109, 110.) And in fact, plaintiffs' counsel long ago attempted to advance the same theory in several nearly-identical cases against other universities. *See, e.g.*, *Clark v. Duke Univ.*, Amended Complaint, 16-cv-1044, ¶¶ 49, 102, 156 (M.D.N.C. Nov. 21, 2016), ECF No. 24; *Kelly v. Johns Hopkins Univ.*, Amended Complaint, 16-cv-2835, ¶¶ 45, 99, 152 (D. Md. Dec. 2, 2016), ECF No. 27; *Vellali v. Yale Univ.*, Amended Complaint, 16-cv-1345, ¶¶ 45, 105, 146 (D. Conn. Dec. 9, 2016), ECF No. 57. Plaintiffs point to no new information gleaned from depositions in this case; nor do they cite any relevant non-public information that was unavailable to them at the outset of the case.

Proposed Count VIII alleges that defendants violated the IPS by including and retaining

10

CREF Stock and TIAA Real Estate as investment options (PSAC ¶ 350), failing to monitor investment performance and plan costs (¶¶ 350-51(c)), and failing to "periodically review the IPS" (¶ 351(d)). The facts underlying these allegations come from documents produced many months ago. Between April 24 and August 18, 2017, defendants had identified and produced numerous core documents, including (1) draft and final versions of the investment policy statements followed by the Northwestern University Retirement Investment Committee ("NURIC"); (2) NURIC's charter and meeting minutes, which appended evaluative materials prepared by NURIC's investment advisors and considered by NURIC; (3) requests for proposals; (4) service provider agreements and invoices; (5) disclosures required by ERISA; and (6) plan enrollment materials, among other documents. (Grabenstein Decl., ¶ 4.) Indeed, all but one of the documents plaintiffs attach as exhibits to the PSAC to support these allegations were produced in 2017.[9] (*Id.* ¶ 10.) Yet plaintiffs offer no justification for advancing this new theory months later, in the last week of the fact discovery period.

Proposed Counts IX and X are predicated on TIAA-CREF's alleged use of Plan participants' personal information to market products and services to them. (PSAC ¶ 357.) In the PSAC, plaintiffs allege that "TIAA marketed several products and services to Plaintiffs Lancaster, Walker, and Hughes," and cite a series of publicly-available articles published in the New York Times in October and November 2017, as factual support for their new claims. (PSAC ¶¶ 277–79, 281.) Plaintiffs have identified no information learned from depositions that was unavailable to them by that time, and in fact, plaintiffs' November 22, 2017, discovery requests make clear that plaintiffs have been aware of this theory for at least five months.

---

[9] The document produced on February 9, 2018, is of tangential relevance to plaintiffs' new claims. (Grabenstein Decl. ¶ 10(e).)

11

Plaintiffs' November 22, 2017, subpoena to TIAA-CREF requested "[d]ocuments relating to TIAA-CREF marketing and selling its private asset management, individual wealth management, and individual retirement products to the Plans' participants." (Grabenstein Decl. ¶ 6.) Plaintiffs' Rule 30(b)(6) deposition notice, dated January 5, 2018, requested that Northwestern designate a witness to testify regarding "TIAA-CREF's and Fidelity's access to the Plans' participant data, the value to TIAA-CREF and/or Fidelity of such access, and TIAA-CREF's and/or Fidelity's use of such data to market services or products to the Plans' participants." (*Id.* ¶ 11.) Plaintiffs' counsel also alleged substantively identical claims against other universities months before depositions began in this case. *Sacerdote v. New York Univ.*, 17-cv-8834, ¶ 91 (S.D.N.Y. Nov. 13, 2017), ECF No. 1; *Clark v. Duke Univ.*, Second Amended Complaint, 16-cv-1044, ¶ 79 (M.D.N.C. Dec. 27, 2017), ECF No. 72.

Because the facts underlying plaintiffs' proposed new claims were available to them "long before [they] sought leave to amend," and because they have advanced no valid justification for their delay, this Court should deny plaintiffs' motion. *Hukic*, 588 F.3d at 432.[10]

### III. The Proposed Amended Complaint Would Unduly Prejudice Defendants.

Plaintiffs' delay unduly prejudices defendants. "Undue prejudice occurs when the amendment brings entirely new and separate claims . . . and when the additional discovery is expensive and time-consuming." *United States v. Ladany*, No. 14-cv-3876, 2015 WL 9259523, at *4 (N.D. Ill. Dec. 18, 2015) (quoting *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill.

---

[10] *Accord S.J. Sr. v. Perspectives Charter Sch.*, No. 09-cv-444, 2011 WL 1297533, at *2 (N.D. Ill. Apr. 4, 2011) (denying motion to amend complaint where plaintiff "must have known enough . . . before the majority of the key depositions" to do so sooner); *Ernst v. Anderson*, No. 02-cv-4884, 2004 WL 1497794 at *3 (N.D. Ill. July 1, 2004) (denying motion to amend complaint where "Plaintiffs had substantial knowledge of these claims months before").

1999) (internal quotations omitted)). Where, as here, discovery is nearly complete when the request for more is made, the cost and disruption is even more prejudicial. *Maduff v. Life Ins. Co. of Virginia*, No. 86-cv-9826, 1988 WL 116855, at *2 (N.D. Ill. Oct. 26, 1988).

Discovery in this case has been ongoing for more than a year, and defendants have agreed to extend the deadline twice. (Dkts. 110 & 135.) Defendants produced more than 450,000 pages of documents in response to plaintiffs' broad requests. Defendants and third parties also have accommodated 12 depositions and agreed to two more—far more than the Rules require. (Grabenstein Decl. ¶¶ 15–26); Fed. R. Civ. P. 30(a)(2)(A)(i). So far, these efforts have cost defendants approximately $4 million in attorneys' fees and expenses. (Grabenstein Decl. ¶ 28.)

Plaintiffs contend that their four new counts are really only "two new proposed claims," which "are narrowly tailored and arise from the same set of operative facts described in the Amended Complaint." (Memo. at 4.) They further contend that additional discovery will be limited and will not cause delay. In fact, the four distinct counts plaintiffs propose all introduce broad new theories of relief, each with the potential to expand the scope of this case. Doing so "is axiomatic of needing to re-open discovery, requiring additional discovery, and delaying the disposition of this case." *Nat'l Union Fire Ins. Co. of Pitts. v. Westport Ins. Corp.*, No. 10-cv-6096, 2012 WL 698540, *1 (N.D. Ill. Feb. 29, 2012).

Plaintiffs maintain that "additional discovery will be highly circumscribed," but offer no support for that assertion. (Memo. at 4.) Plaintiffs fail even to identify the categories of additional discovery they intend to seek. Instead, they suggest that "most, if not all, of" of the additional discovery will come only from third parties like TIAA-CREF. (Memo. at 4 n.3.) That is not necessarily so. Defendants will need to take additional discovery to adequately defend against the new theories. For example, defendants will require additional written and oral

13

discovery from each plaintiff to determine their bases for these new claims. Defendants also may need additional third party discovery, and will need to participate in any discovery that plaintiffs seek from TIAA-CREF or other third parties.

The late additions are especially burdensome where, as here, plaintiffs propose theories that bear only a tangential relationship to the other claims in this case. *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 08-cv-6584, 2010 WL 151998, at *4–5 (N.D. Ill. Jan. 14, 2010) (denying amendments that constituted "new, unrelated claims connected only by their tangential relationship to" existing claims). For example, proposed Counts IX and X, which allege that defendants breached their fiduciary duties and engaged in prohibited transactions when they purportedly "did nothing [to] prevent" TIAA-CREF from supposedly "misus[ing]" Plan participant data (PSAC ¶¶ 357–58), bear little relationship to the allegations in the current complaint. Because these two counts are not based on the same facts as the existing claims, they threaten to drastically expand the scope of discovery. If allowed, these new claims will force defendants to investigate new issues, including the extent of vendor access to participant data, vendor contacts with participants, the services promoted, vendor marketing tactics, participants' privacy and marketing preferences, and how they communicated those preferences.

Had defendants known of these proposed claims months ago—as plaintiffs did—they could have incorporated such inquiries into the significant discovery that already has occurred. But because those opportunities have now passed, the burden of the additional discovery necessitated by plaintiffs' new claims is undue, and this Court should deny leave to add them.

### IV. To The Extent The Court Allows Any Amendment To The Complaint, Plaintiffs Should Not Be Permitted To Take Any Additional Discovery.

If the Court permits plaintiffs to amend their complaint, it should not permit plaintiffs to take any additional discovery. Rule 26(b)(2)(C)(ii) provides that "the court must limit the

frequency or extent of discovery . . . if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). Because plaintiffs have had ample opportunity to seek discovery on these issues (and indeed, did so), the Court should not allow plaintiffs to engage in a fishing expedition now. *See*, *e.g.*, *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 410 (N.D. Ill. 2008) (noting that "the court allowed [plaintiff] to file a second amended complaint on condition that he not propound additional discovery absent leave" to avoid "prejudice from the expansion of discovery"); *Seals v. Michael Reese Hosp. & Med. Ctr.*, No. 87-cv-3516, 1988 WL 96371, at *3 (N.D. Ill. Sept. 12, 1988) (granting motion for leave to amend complaint but denying additional discovery of information that "was legally relevant prior to" the fact discovery deadline).

If plaintiffs are permitted to take further discovery, the Court should require plaintiffs to bear the expense of defendants' compliance with any requests. Rule 26(c) "give[s] trial courts considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). The undue burden and expense that further discovery in this case would impose (as set forth in Section III) amply justifies shifting additional discovery expenses in this case to plaintiffs.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion should be denied.

Dated: May 7, 2018

Respectfully submitted,

By:   /s/ Craig C. Martin
     Craig C. Martin
     Amanda S. Amert
     Casey T. Grabenstein
     Jenner & Block LLP
     353 N. Clark Street
     Chicago, IL 60654-3456
     Telephone: (312) 222-9350
     Facsimile: (312) 527-0484
     *Attorneys for Defendants*