IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL HUGHES,  et al., | ) | |
| | ) | No.  1:16-cv-8157 |
| Plaintiffs, | ) | |
| | ) | District Judge Jorge L. Alonso |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| NORTHWESTERN | ) | |
| UNIVERSITY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Before the Court is plaintiffs' Motion to Compel Supplemental Document

Production.[1] Dkt. 206. For the reasons set forth below, the motion is granted.

### **Background[2]**

Plaintiffs filed the instant action on August 17, 2016, bringing several claims

against Defendants Northwestern University, Northwestern University Retirement

Investment Committee, members of that committee, and two Northwestern senior

administrators (collectively "Northwestern") for violations in managing the

Northwestern University Retirement Plan and the Northwestern University

Voluntary Savings Plan (the "Plans"). This case has a protracted procedural history

that the Court need not expound upon. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 630-

---

[1] Plaintiffs' motion also seeks an extension of pretrial deadline. However, the District Judge granted the parties' separate motion for an extension of these deadlines, Dkt. 219, rendering this aspect of plaintiffs' motion moot.

[2] The Court presumes familiarity with the facts of this case and includes only those facts that are relevant to the instant dispute.

31, 634 (7th Cir. 2023). After multiple appeals, plaintiffs' amended complaint has two remaining claims: (1) "Northwestern incurred unreasonable recordkeeping fees by failing to monitor and control those expenses;" and (2) "Northwestern breached its duty of prudence by failing to replace retail-class shares of funds with cheaper but otherwise identical institutional-class shares." *Id*.

In the instant motion, plaintiffs seek Northwestern's supplementation of their responses to plaintiffs' First Set of Requests for Production. Specifically, plaintiffs request the supplementation of eight categories of documents[3] for the period following early 2018—when Northwestern made its initial production—to the present. Northwestern objects, arguing any documents created after 2018 are irrelevant, and that production would be duplicative and unduly burdensome. The parties met and conferred on October 9, 2023, but were unable to resolve the dispute. Plaintiffs' motion followed.

## Analysis

Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject

---

[3] The categories are: (1) Teachers Insurance and Annuity Association of America and College Retirement Equities Fund ("TIAA") investment fee and expense disclosures for the Plans; (2) TIAA revenue credit reports; (3) revenue credit account reports for the Plans; (4) Fidelity quarterly invoices for the Plans; (5) fiduciary committee minutes and materials; (6) amendments of Plan documents; (7) amendments of contracts with the Plans' recordkeepers and investment advisors; and (8) transactional data for the Plans.

matter"). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Courts have broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018).

A party may compel discovery under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request, or when its response is insufficient. Fed. R. Civ. P. 37(a). "The objecting party carries the burden of showing why a particular discovery request is improper." *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 3455315, at *1 (N.D. Ill. May 15, 2023). "The burden is not satisfied by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Osada v. Experian Information Solutions, Inc.*, 290 F.R.D. 485, 494 (N.D. Ill. 2012) (quoting *Burkybile v. Mitsubishi Motors, Corp.*, No. 04–C–4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006).

### A.    Documents created after 2018 are relevant to plaintiffs' recordkeeping claim and must be produced.

Plaintiffs argue the requested documents "are all necessary to determine the recordkeeping and investment management fees paid by the Plans after early 2018

or the fiduciary process for managing those fees." Dkt. 206 at 1.

For context, "[r]ecordkeeping is a service necessary for every defined contribution plan." Dkt. 38, Am. Compl. ¶ 48. Recordkeeping services may include "keep[ing] track of the amount of each participant's investments," "provid[ing] each participant with a quarterly account statement," "maintain[ing] a plan website or call center that participants can access to obtain information about the plan and to review their accounts," and "provid[ing] access to investment education materials or investment advice." *Id.* "These services are largely commodities, and the market for recordkeeping services is highly competitive." *Id.* Plaintiffs' claim that Northwestern failed to monitor the Plans' recordkeeping fees, thereby allowing excessive fees, is predicated upon three alleged failures of Northwestern: (1) failure "to adopt a per-participant fee or flat dollar recordkeeping fee," allowing "the recordkeepers' compensation to be determined by an uncapped percentage of the assets in the Plans;" (2) failure "to conduct a request for proposal ("RFP") from providers in the market every three to five years, as is standard in the defined contribution industry;" and (3) failure "to leverage the full size of the Plans by allowing the Plans to use two recordkeepers rather than one." Dkt. 206 at 7.

Northwestern objects to the temporal scope of plaintiffs' discovery requests, claiming it has taken action to cure any alleged violation. In February 2016, Northwestern approved Fidelity as lead recordkeeper, with the Teachers Insurance and Annuity Association of America and College Retirement Equities Fund ("TIAA") as secondary recordkeeper. Dkt. 220 at 4. Northwestern claims this change "led to

significantly lower fees,"[4] remedying any breach and obviating the relevance of plaintiffs' discovery requests. Dkt. 220 at 4. This argument is unpersuasive for multiple reasons. First, plaintiffs' amended complaint—the operative pleading— asserts that Northwestern's unreasonable recordkeeping management is ongoing. Am. Compl. ¶ 143-144, 146 (alleging Northwestern continues to "maintain a costly and ineffective multiple recordkeeping structure for the Retirement Plan to date" and that the recordkeeping entities are presently compensated through unreasonable revenue sharing payments); *see also Hughes*, 63 F.4th at 625 ("Plan fiduciaries have a *continuing* duty to monitor their expenses to make sure that they are not excessive with respect to the services received.") (emphasis added). Further, Northwestern's restructuring of the Plans' recordkeeping system does not speak to (1) whether the current system defrays costs through revenue sharing or a per-participant or flat dollar fee; (2) whether Northwestern has mitigated any potential unreasonable fees through actions such as issuing an RFP to solicit quotes and competitive bids from other service providers; or (3) whether the lead/secondary recordkeeping system inures the same benefits as consolidation to a single recordkeeper would.

---

[4] Northwestern also argues that "Seventh Circuit has previously noted that plaintiffs themselves have pled that Northwestern successfully lowered the Plans administrative fees during that restructuring." Dkt. 220 at 4. Even if Northwestern is correct in its reading, lower fees are not *per se* reasonable. For example, it is still possible that these lower fees are obtained through uncapped revenue sharing, leading to increased fees without a corresponding increase in recordkeeping services, and that Northwestern did not appropriately consider service providers beyond Fidelity and TIAA.

Although Northwestern may have restructured its recordkeeping system, the associated fees may still be inadequately monitored and excessive, and therefore relevant to plaintiffs' claims. Plaintiffs are entitled to discover if that is indeed the case, and Northwestern must supplement its responses to plaintiffs' requests for production.

### B.    Production of the contested documents is neither cumulative nor unduly burdensome.

Northwestern claims that plaintiffs already possess the information sought, and that any further production would be cumulative. The documents that Northwestern alleges plaintiffs possess consist of: (1) documents offering insight into the Plans' restructuring, and (2) "58,000 pages of plan transactional data up to the present." Dkt. 220 at 5-6. Northwestern claims the first category "demonstrate[s] the feasibility of plan restructuring prior to 2016" and the second category shows "both the complete lineup of investment offerings post-2016 and any changes that would have subsequently been made to those offerings." *Id*. Northwestern, however, does not argue that these documents reflect upon its monitoring recordkeeping of fees, which is the primary issue of the instant motion. Plaintiffs claim the "transactional data and summary plan descriptions . . . do not contain the total recordkeeping or investment management fees paid by the Plan and are not cumulative of the invoices, fee disclosures, and contracts" that plaintiffs seek. Dkt. 222 at 4. Northwestern's response to the motion neither raises nor refutes these points. Accordingly, the Court finds that Northwestern's supplementation would not be cumulative.

Northwestern also contends that producing documents from 2018 to the present would be unduly burdensome. "Undue burden or expense, actual or potential, must be shown by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 3809763, at \*2 (N.D. Ill. Aug. 4, 2014) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16 (1981)). Northwestern does not make the requisite showing of undue burden with its assertions that it will need to spend time searching for the documents and "that production would contain thousands of pages" for even a single category. *Id.* at 9. Further, plaintiffs have demonstrated that Northwestern's conclusory assertions of undue burden are hyperbolic. Plaintiffs attach a TIAA investment fee and expense disclosure document to their motion. *See* Dkt. 222, Ex. 23. This is an annual document and contains three pages. If Northwestern produces this document for each Plan, for each of the last six years, it will need to produce approximately 36 pages. The same limited production is true for various other categories. *See also* Dkt. 222, Ex. 24 (annual document that is five pages long, equaling 60 pages of production); Ex. 25 (quarterly document that is four pages long, equaling 96 pages of production). Even if Northwestern was to produce thousands of pages of documents, plaintiffs have demonstrated that these documents are relevant to their claim that Northwestern is inadequately monitoring recordkeeping fees. Northwestern has not sufficiently demonstrated undue burden given the relevance of these documents, the conclusory nature of

Northwestern's claims of undue burden, and plaintiffs' representations regarding the number of documents.

## Conclusion

For the reasons set forth above, plaintiffs' motion to compel is granted. Northwestern must supplement their document production related to the eight categories plaintiffs identified. To the extent that Northwestern does not possess documents responsive to categories 2 and 4, they shall request them from TIAA and Fidelity. Northwestern shall begin its supplementation immediately and the deadline for completion is September 6, 2024. Fact discovery shall close on November 5, 2024. Plaintiffs' Rule 26(a)(2) expert reports shall be disclosed by December 5, 2024. Northwestern's Rule 26(a)(2) expert reports shall be disclosed by January 10, 2025. Rebuttal expert reports shall be disclosed by February 10, 2025. Expert discovery shall be complete by March 13, 2025.

**So Ordered.**

**Jeannice W. Appenteng**
**United States Magistrate Judge**